# 21-2062

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

————

JAMES EARL WALTON,

*Petitioner-Appellant,*

-vs-

WARDEN,

*Respondent-Appellee.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## OPENING BRIEF FOR DEFENDANT-APPELLANT JAMES EARL WALTON

TODD BUSSERT
FROST BUSSERT, LLC
350 Orange Street, Suite 100
New Haven, CT 06511
Tel. (203) 495-9790
Fax (203) 495-9795
Email: tab@frostbussert.com

TO BE ARGUED BY: TODD A. BUSSERT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................. i

TABLE OF AUTHORITIES .................................................................. ii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE.................................................................3

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ........................................................................................12

I.    IT IS UNCONTESTED BOTH THAT *SIMMONS* INVALIDATED ONE OF THE TWO PREDICATES MATERIALLY RELIED ON IN APPLYING THE CAREER OFFENDER GUIDELINE AND THAT MR. WALTON'S SENTENCING RANGE IS SUBSTANTIALLY LOWER BUT FOR THAT APPLICATION.………………………………………………….....12

II.   THIS COURT SHOULD JOIN OTHER CIRCUITS AND REVERSE PRECEDENT, ALLOWING A FEDERAL PRISONER TO SEEK RELIEF VIA 28 U.S.C. § 2241 WHERE THE DISTRICT COURT, AT THE TIME OF SENTENCING, MATERIALLY RELIED ON SETTLED LAW, WHICH THEREAFTER CHANGED RETROACTIVELY AND SUBSEQUENT TO THE PRISONER'S ABILITY TO OBTAIN RELIEF VIA DIRECT APPEAL OR A FIRST § 2255 MOTION PASSED, SO THAT THE MATERIAL RELIANCE NOW PRESENTS AS AN OBJECTIVELY ASCERTAINABLE ERROR SUFFICIENTLY GRAVE TO BE DEEMED A FUNDAMENTAL DEFECT ................................................................................14

CONCLUSION .....................................................................................24

CERTIFICATIONS

## TABLE OF AUTHORITIES

CASES:

*Adams v. United States*, 372 F.3d 132 (2d Cir. 2004) ............................................. 12

*Allen v. Ives*, 950 F.3d 1184 (9th Cir. 2020) ........................................................... 19

*Allen v. Ives*, 976 F.3d 863 (9th Cir. 2020) ............................................................. 19

*Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013) .................................................. 17

*Boumediene v. Bush*, 553 U.S. 723 (2008) .............................................................. 16

*Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010) ..................................... 6-8, 15

*Davis v. United States*, 417 U.S. 333 (1974) ..................................................... 16-17

*Dhinsa v. Krueger*, 917 F.3d 70 (2d Cir. 2019) ..................................................... 14

*Freeman v. United States*, 564 U.S. 522 (2011), *holding modified by Hughes v. United States*, -- U.S. --, 138 S. Ct. 1765 (2018) ...................................... 19

*Gall v. United States*, 552 U.S. 38 (2007) ............................................................. 19

*Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) ..................................... 15

*Hill v. United States*, 368 U.S. 424 (1962) ............................................................ 18

*In re Jones*, 226 F.3d at 328 (4th Cir. 2000) ......................................................... 18

*INS v. St. Cyr*, 533 U.S. 289 (2001) ....................................................................... 17

*Johnson v. United States*, 576 U.S. 591 (2015) ...................................................... 9

*Kimbrough v. United States*, 552 U.S. 85 (2007) ................................................... 19

*Lester v. Flournoy*, 909 F.3d 708 (4th Cir. 2018) .................................................. 18

*Love v. Menifee*, 333 F.3d 69 (2d Cir. 2003) ......................................................... 15

*Miller v. United States*, 735 F.3d 141 (4th Cir. 2013) .............................. 8 n.5, 15

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) ................................. 21

*Nelson v. Campbell*, 541 U.S. 637 (2004) ........................................... 17

*Peugh v. United States*, 569 U.S. 530 (2013) ................................... 19-21

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ............................................ 1

*Russello v. United States*, 464 U.S. 16 (1983) .................................... 17

*Schriro v. Summerlin*, 542 U.S. 348 (2004) ........................................ 15

*Teague v. Lane*, 489 U.S. 288 (1989) .............................................. 15

*Triestman v. United States*, 124 F.3d 361 (2d Cir. 1997) .............................. 14

*United States v. Addonizio*, 442 U.S. 178 (1979) ............................... 21

*United States v. Booker*, 543 U.S. 220 (2005) ............................... passim

*United States v. Eakman*, 378 F.3d 294 (3d Cir. 2004) ......................... 22

*United States v. Folk*, 954 F.3d 597 (3d Cir. 2020) ........................... 21

*United States v. Foote*, 784 F.3d 931 (4th Cir. 2015) ...................... 18-19

*United States v. Harp*, 406 F.3d 242 (4th Cir. 2005) ........................... 6

*United States v. Powell*, 691 F.3d 554 (4th Cir. 2012) ......................... 8

*United States v. Rodriguez*, 553 U.S. 377 (2008) ............................... 6

*United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) ....................... passim

*United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), *cert. denied*, 139 S.
  Ct. 1318 (2019) .............................................................. 9, 15-18

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ........................................ 17

STATUTES AND RULES:

18 U.S.C. § 2253 ................................................................ 6

18 U.S.C. § 3582 ................................................................ 8, 10 n.6

21 U.S.C. § 841 ................................................................ 3

21 U.S.C. § 846 ................................................................ 3

18 U.S.C. § 924 ................................................................ 3, 12

28 U.S.C. § 1291 ................................................................ 1

28 U.S.C. § 2241 ................................................................ passim

28 U.S.C. § 2255 ................................................................ passim

Fed. R. Crim. P. 52 ................................................................ 21

Fed. R. App. P. 23 ................................................................ 1

U.S.S.G. § 2D1.1 ................................................................ 13

U.S.S.G. § 5K1.1 ................................................................ 20

N.C. Gen. Stat. §15A-1340 ................................................................ 7

OTHER AUTHORITY:

John Patrick Bailey, *Run-On Sentence:  Remedies for Erroneous Career Enhancements*, 65 Duke L.J. 1478 (2016) .................................................... 14

USSC, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* (Nov. 2004) ................................................... 13

USSC, *Report To The Congress:  Career Offender Sentencing Enhancements* (Aug. 2016) .................................................... 12-13

## **JURISDICTIONAL STATEMENT**

While a prisoner at FCI-Low Danbury, Connecticut, Mr. Walton sought relief before the United States District Court for the District of Connecticut via a petition brought pursuant to 28 U.S.C. § 2241. Joint Appendix at ("JA") 5. On August 2, 2021, the Court (Shea, J.) dismissed the § 2241 petition. JA 51. Mr. Walton timely filed a notice of appeal, on August 23, 2021. JA 60. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1291.

Of note, subsequent to this appeal being brought, the Bureau of Prisons transferred Mr. Walton. He is currently housed at FCI-Low Sandstone, Minnesota. This Court nonetheless retains jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004); *id.* 458 (Stevens, J., dissenting) ("All Members of this Court agree that [...] if [personal] jurisdiction was proper when the petition was filed, it cannot be defeated by a later transfer of the prisoner to another district."); *see also* Fed. R. App. P. 23(a).

## <u>STATEMENT OF THE ISSUES</u>

• Whether this Court should join other Circuits and reverse precedent, allowing a federal prisoner to seek relief via 28 U.S.C. § 2241 where the district court, at the time of sentencing, materially relied on settled law, which thereafter changed retroactively and subsequent to the passing of the prisoner's ability to obtain relief via direct appeal or a first § 2255 motion, so that the material reliance now presents as an objectively ascertainable error sufficiently grave to be deemed a fundamental defect.

## STATEMENT OF THE CASE

Through the underlying petition, James Earl Walton challenged a 2008 sentence imposed in the Eastern District of North Carolina that derived from application of the career offender guideline. He relied, in part, on *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), which, as the United States Attorney's Office for the Eastern District of North Carolina conceded, invalidated use of one of the two convictions used in his case as a career offender predicate. The 2241 petition followed several, good faith efforts to obtain relief.

### A. The EDNC Sentences

On January 7, 2008, Mr. Walton pled guilty to Counts One and Three of a four-count indictment: (i) conspiracy to distribute and to possess with the intent to distribute more than five kilograms of cocaine in violation of 18 U.S.C. §§ 841(a)(1) and 846 and (ii) use of and carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). *United States v. James Earl Walton*, Docket No. 2:07-CR-17-F-1 (EDNC); *see* JA 46. Count One carried a potential penalty of 10 years-to-life imprisonment while Count Three carried five years-to-life consecutive to any other term of imprisonment. Through the

3

attendant plea agreement, Mr. Walton also admitted to violating the terms of his supervised release in another EDNC matter, Docket No. 2:00-CR-22-BO-1.[1]

Mr. Walton's total offense level of 33 reflected a quantity finding of six kilograms' powder cocaine and 500 grams' cocaine base, a two-level role enhancement and a three-level acceptance reduction. With a CHC IV, it produced a guideline range of 188-235 months' imprisonment as to Count One that, when adding the five-year consecutive mandatory minimum for Count Three, resulted in a final range of 248-295 months.

This is not the range that was applied, however, because Mr. Walton was found to be a career offender based on prior state and federal drug convictions. As to the former, in 1999, when we was 20 years old, Mr. Walton pled guilty to Possession of a Schedule II Controlled Substance With Intent to Sell or Deliver, a state (NC) conviction for which he received a suspended eight-to-ten month sentence and 36 months' probation. As to the latter, in 2000, Mr. Walton was convicted of Possession With Intent to Distribute Crack Cocaine (Cocaine Base). His total offense level was thus 34, which, with a CHC VI, produced a range of 262-327 months. Adding the five-year consecutive mandatory minimum resulted a final range of 322-387 months.

---

[1] The plea agreement contained a waiver provision, which the district court here did not reach or otherwise address.

4

On February 12, 2008, Mr. Walton was sentenced to 37 months' imprisonment for the supervised release violation.

On May 29, 2008, Mr. Walton appeared for sentencing in the new criminal matter. In support of its substantial assistance motion, the government offered (not under seal): "Defendant has been debriefed on at least two occasions and provided detailed information concerning his drug trafficking activities since being released from prison in 2005. Defendant identified other people involved in drug trafficking, and it is anticipated that one of those individuals will be indicted federally based in part on information provided by Defendant." Mr. Walton was sentenced to, *inter alia*, 300 months' imprisonment (240 months as to Count One and a consecutive sentence of 60 months as to Count Three) consecutive to the supervised release violation sentence he was then serving.[2] Judgement entered, on May 29, 2008. No appeal was taken.

## B.    First 2255 Motion

On or about December 5, 2011, Mr. Walton filed *pro se* a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By Person In Federal Custody. The motion centered on the Fourth Circuit's holding in *United States v. Simmons*, which found that "a prior conviction under North Carolina law is

---

[2]  Combining the supervised release violation sentence, Mr. Walton received a total effective sentence of 337 months, or 28 years and one month.

punishable by more than one year of imprisonment only if the defendant's

conviction, based on his individual offense characteristics and criminal history,

allowed for such a sentence." *Simmons*, 649 F.3d at 244. The claim was

effectively: because certain North Carolina drug felonies do not qualify as

sentencing enhancement predicates, the aforementioned 1999 state conviction

should not have.

    Moving to dismiss, the government advanced four reasons why the 2255

motion should not be heard.

1. The plea agreement's waiver provision (*supra* Note 1) barred the motion.

2. Where 18 U.S.C. § 2253(f)(3) relies on new rights the Supreme Court announces and where *Simmons* rests on *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), decided on June 14, 2010, the motion was untimely.

3. *Carachuri-Rosendo* did not announce a new substantive rule that could be applied retroactively (recognizing that the Fourth Circuit then had that very issue before it in then as yet decided *Powell*, *infra*).

4. Having not taken an appeal, Mr. Walton procedurally defaulted on his claim, and no exception existed because he was unable to demonstrate cause or actual innocence. In this regard, the government contended that *United States v. Rodriguez*, 553 U.S. 377, 389 (2008), which *Carachuri-Rosendo v. Holderi* cites and which was argued in *Simmons* as a basis for overturning *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005), was decided before Mr. Walton was sentenced.[3]

---

[3] The government contended that any argument concerning *Rodriguez*'s impact on *Harp* "could and should have been made at the time of Walton's sentencing and on direct appeal." Leaving aside that government's position in this respect arguably supported an ineffective assistance of counsel claim, if *Rodriguez*'s import was as

Through appointed counsel, Mr. Walton responded to the government's motion to dismiss. Relative to *Simmons*, which overturned *Harp*, Mr. Walton offered:

> Under the *Simmons* court's definition of a felony offense, Mr. Walton's prior North Carolina convictions on November 30, 1999 for simple possession of cocaine and possession with intent to sell and deliver a schedule II substance cannot serve as predicates for the career offender enhancement because Mr. Walton could not have been imprisoned for more than a year for those conviction. Mr. Walton's Presentence Report details his criminal history prior to his arrest for these charges. It reflects the convictions which were incorrectly deemed North Carolina felonies: simple possession of cocaine, for which Mr. Walton received six to eight months in custody and possession with the intent to sell and deliver a controlled substance committed on October 9, 1999, for which Mr. Walton received eight to ten months custody.[…] Therefore, with respect to all his prior convictions, Mr. Walton never faced a term of imprisonment exceeding one year. N.C. Gen. Stat. §15A-1340.17.[4]

In reply, the government conceded that, under *Simmons*, Mr. Walton's prior state conviction "cannot serve as a predicate for career offender status" (*see* JA 18 n1) but argued that while "*Simmons* alters the legal characterization of Walton's prior state felony conviction, it is not a newly discovery fact for purposes of the one year

---

clear in 2008 as the government claimed in 2011, then the validity of the plea agreement is implicated, namely the government inducing Mr. Walton into an agreement that it apparently understood provided an erroneous guideline range.

[4] Relative to the government's claim as to timeliness, Mr. Walton argued that raising the claim under *Carachuri-Rosendo* rather than *Simmons* would have resulted in summary rejection, citing a series of EDNC opinions that so held.

limitation period under § 2255(f)(4)." The Court (Fox, SJ) granted the government's motion to dismiss, finding, *inter alia*, (i) the plea agreement's waiver provision applicable; (ii) the 2255 motion untimely, considering when *Carachuri-Rosendo* was decided; and (iii) that *Carachuri-Rosendo* announced a procedural, not substantive rule, and therefore was not retroactive (citing *United States v. Powell*, 691 F.3d 554 (4th Cir. 2012)).[5]

The Court denied a certificate of appealability. Mr. Walton appealed. Finding that Mr. Walton "has not made the requisite showing necessary," the Court of Appeals denied a certificate of appealability and dismissed the appeal, on September 24, 2013.

**C.    3582(c)(2) Motion**

On or about May 22, 2015, Mr. Walton moved *pro se* for a reduction in sentence pursuant to 18 U.S.C. § 3582 and Amendment 782. On January 5, 2016, the Court (Fox, SJ), denied the 3582 motion because "[t]he offense level resulted from application of the career offender guideline."

---

[5] On August 21, 2013, the Fourth Circuit decided *Miller v. United States*, 735 F.3d 141 (4th Cir. 2013), which held that "*Simmons* did announce a substantive rule when it applied *Carachuri's* principles and then narrowed the class of offenders and range of conduct that can be subject to punishment." The Miller court distinguished *Powell* as implicating *Carachuri* and an issue of procedure. 735 F.3d at 147.

D.    **Second 2255 Motion**

On or about June 23, 2016, Mr. Walton filed a second *pro se* 2255 motion

grounded on the claim that "Petitioner no longer qualifies as a career criminal (in)

light (of) Johnson v. United States, 135 S.Ct. 2551 (2015)," specifically "prior

convictions which were considered crimes of violence are indeed no longer

considered crimes of violence."  The government moved to dismiss what it

characterized an unauthorized successive 2255 motion.  Mr. Walton responded that

if deemed unauthorized, the motion should be referred to the Court of Appeals.

Doc. 79.  The Court (Fox, SJ) dismissed the 2255 motion, on September 16, 2016.

Doc. 80.  Mr. Walton appealed.

Finding that Mr. Walton failed to make the showing necessary to support of

certificate of appealability, the Court of Appeals dismissed the appeal, on February

28, 2017.  In so doing, it noted *Johnson*'s inapplicability because Mr. Walton's

career offender status is "premised on two prior controlled substance convictions."

E.    **The Instant, Challenged Petition**

On March 28, 2018, the Fourth Circuit decided *United States v. Wheeler*,

886 F.3d 415 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1318 (2019), which held that

28 U.S.C. § 2241 provided a vehicle by which federal prisoners could obtain relief

from sentencing-related errors subject to satisfying a four-part test.

On or about September 17, 2018, Mr. Walton filed *pro se* the instant Petition For A Writ of Habeas Corpus Under 28 U.S.C. § 2241.[6]  JA 5.  A memorandum in support was filed, on May 1, 2020.  JA 19.  On February 22, 2021, the government filed a response to the district court's show cause order (Doc. 22).  JA 39.  On August 2, 2021, the District Court dismissed the § 2241 petition.  JA 51, 59.  Mr. Walton timely appealed, on August 23, 2021.  JA 60.

---

[6] Subsequent to filing the challenged § 2241 petition, Mr. Walton continued to seek relief in EDNC.  For instance, on or about February 5, 2019, he filed *pro se* a Motion For Reduction Of Sentence Pursuant To The FIRST STEP Act, which the Court eventually denied, on October 7, 2020, with the Court of Appeals affirming that denial, on March 23, 2021.

On or about May 1, 2021, Mr. Walton moved *pro se* for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on the post-sentencing change in his career offender status.  Recognizing (i) that Mr. Walton's guideline range on Count One would now be 121-151 months' imprisonment and 181-211 months accounting for Count Three; (ii) that Mr. Walton had served more than 170 months (equivalent to greater than a 196-month sentence, accounting for good time); and (iii) that Mr. Walton, who has used his time in custody to better himself, does not pose a danger to the community if released, the Court, on August 26, 2021, modified the original sentences so that the 300-month criminal sentence runs concurrently, rather than consecutively, to the 37-month supervised release violation sentence.  (For reasons unclear, as of this writing, the Bureau of Prisons has not changed Mr. Walton's projected release date, which continues to show as February 21, 2031.  *See* JA 22 (release date as of May 1, 2020).).

On or about December 24, 2021, Mr. Walton moved again *pro se* for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The EDNC docket shows that motion as pending as of this writing.

## <u>SUMMARY OF ARGUMENT</u>

Mr. Walton understands and takes no issue with the district court's adherence to the law of this Circuit, which, unlike that of the Fourth Circuit, from which the challenged sentence arises, does not permit sentenced prisoners to seek relief for sentencing-related errors, like his, via 21 U.S.C. § 2241. Mr. Walton's § 2241 petition is thus properly seen as a vehicle to bring this appeal, asking this Court, in the course of its *de novo* review, to revisit past holdings and join those Circuits that have expanded § 2241's scope.

In making this request, Mr. Walton is not attempting to open the proverbial floodgates of prisoner litigation. Rather, he respectfully submits that a rule tailored to instances where subsequent, retroactive changes in the law serve to impact what were sentencing courts' original, material reliances is appropriate and warranted.

Thankfully, such a rule already exists. It is simply a question for this Court whether it chooses to adopt it, at least fundamentally. Through this appeal, Mr. Walton asks not only that this Court go as far as sister Circuits but also a step further. In particular, Mr. Walton respectfully submits that an avenue of relief should not be available solely to those defendants sentenced under the pre-*Booker*, mandatory guideline regimen. Given the guidelines continued preeminence in the federal sentencing process, relief should be available whenever the sentencing court materially relied on the error at-issue.

11

## **ARGUMENT**

"When reviewing a district court's dismissal of a § 2241 petition," this court "examine[s] both the merits of the petition and questions concerning subject matter jurisdiction *de novo*." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004).

I. **IT IS UNCONTESTED BOTH THAT *SIMMONS* INVALIDATED ONE OF THE TWO PREDICATES MATERIALLY RELIED ON IN APPLYING THE CAREER OFFENDER GUIDELINE AND THAT MR. WALTON'S SENTENCING RANGE IS SUBSTANTIALLY LOWER BUT FOR THAT APPLICATION.**

James Earl Walton is a drug offender (wrongly) sentenced as a career offender. In light of the 924(c) count to which he also pled guilty, Mr. Walton's guideline range was 322-387 months' imprisonment, 74-92 months higher than the 248-295 range that would have applied if he were not deemed a career offender.

Although "career offenders" account for about three percent of federal offenders annually, they comprise roughly 11 percent of the federal prison population given their sentence lengths. USSC, *Report To The Congress: Career Offender Sentencing Enhancements* at 18 (Aug. 2016). Moreover, the vast majority of defendants





deemed career offenders would otherwise be sentenced as drug offenders. *See Id.* at 19 ("In 2014, nearly three-quarters (74.1%) of career offenders were convicted of a drug trafficking offense and would have been sentenced pursuant to §2D1.1."). Further, and not surprisingly, the career offender provisions disproportionately impacts minority defendants, especially Black males, like Mr. Walton:

> Although Black offenders constituted just 26 percent of the offenders sentenced under the guidelines in 2000, they were 58 percent of the offenders subject to the severe penalties required by the career offender guideline. Most of these offenders were subject to the guideline because of the inclusion of drug trafficking crimes in the criteria qualifying offenders for the guideline.

USSC, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System I Achieving the Goals of Sentencing Reform*, 133-34 (Nov. 2004); *see Report To The Congress* at 19 ("In fiscal year 2014, Black offenders accounted for more than half (59.7%) of offenders sentenced under the career offender guideline").

The Fourth Circuit's holding in *Simmons* rendered invalid reliance on certain state drug convictions, like Mr. Walton's, in support of career offender determinations. The United States Attorney's Office for the Eastern District of North Carolina concedes that. JA 18 n1. As noted (Note 6, *ante*), if sentenced today Mr. Walton's range would be 181-211 months' imprisonment, that is 141-176 months less than the range under which he was sentenced. Yet, relief, that is, re-sentencing as something other than a career offender remains elusive.

13

**II.    THIS COURT SHOULD JOIN OTHER CIRCUITS AND REVERSE PRECEDENT, ALLOWING A FEDERAL PRISONER TO SEEK RELIEF VIA 28 U.S.C. § 2241 WHERE THE DISTRICT COURT, AT THE TIME OF SENTENCING, MATERIALLY RELIED ON SETTLED LAW, WHICH THEREAFTER CHANGED RETROACTIVELY AND SUBSEQUENT TO THE PRISONER'S ABILITY TO OBTAIN RELIEF VIA DIRECT APPEAL OR A FIRST § 2255 MOTION PASSED, SO THAT THE MATERIAL RELIANCE NOW PRESENTS AS AN OBJECTIVELY ASCERTAINABLE ERROR SUFFICIENTLY GRAVE TO BE DEEMED A FUNDAMENTAL DEFECT.**

Mr. Walton acknowledged that the district court's review turned on the question of whether it "enjoys jurisdiction under 28 U.S.C. § 2241 to grant relief. *See Dhinsa v. Krueger*, 917 F.3d 70, 82 (2d Cir. 2019) ('The threshold savings clause analysis does not replace a full merits analysis, however; they are not co-extensive.')." JA 19; *see* JA 28-29 (discussing *Triestman v. United States,* 124 F.3d 361 (2d Cir. 1997)).  Finding that Mr. Walton's petition did not fall within § 2241's savings clause, as Circuit precedent defines it, the district court found that it lacked subject matter jurisdiction and, accordingly, dismissed the petition. *See* JA52-54.  Consistent with his argument below, Mr. Walton prays this Court reconsider precedent so that concerns about finality do not trump justice and fundamental fairness since "without justice, finality is nothing more than a bureaucratic achievement."  John Patrick Bailey, *Run-On Sentence:  Remedies for Erroneous Career Enhancements*, 65 Duke L.J. 1478, 1518 (2016) (quoting

14

*Gilbert v. United States*, 640 F.3d 1293, 1337 (11th Cir. 2011) (en banc) (Hill, J., dissenting)).

Relative to post-conviction claims that implicate the savings clause, "[i]n *Teague v. Lane,* 489 U.S. 288 [] (1989), the Supreme Court held that-with two minor exceptions-only decisions that establish new substantive rules are to be applied retroactively to cases on collateral review." *Love v. Menifee*, 333 F.3d 69, 73 (2d Cir. 2003). In *Miller v. United States*, 735 F.3d 141 (4th Cir. 2013), the Fourth Circuit held "that a *Teague* exception applies because *Simmons* announced a new substantive rather than procedural rule." *Id.* 145.

> The *Simmons* decision changed the way this Court determines whether prior convictions for certain lower-level North Carolina felonies are punishable by more than one year in prison. This Court applied *Carachuri* to create a new substantive rule. *Simmons* requires the court to look at how much prison time the defendant was exposed to given his own criminal history at the time he was sentenced and any aggravating factors that were actually alleged against him.[…] The fact that this Court relied on *Carachuri* in reaching its decision in *Simmons* does not mean that *Carachuri* itself announced a new rule of substantive criminal law, only that this Court applied *Carachuri* in such a way as to announce such a rule. *Simmons* altered "the class of persons that the law punishes," *Schriro,* 542 U.S. at 353, 124 S.Ct. 2519, and announced a substantive rule that is retroactively applicable.

*Id.* 145–46 (comparing to other, Supreme Court decisions that announced substantive rules).

Thereafter, the Fourth Circuit announced in *Wheeler*, *supra*, a four-factor test under which prisoners can seek relief pursuant to 28 U.S.C. § 2241. *Id.* ("The

savings clause is different—it does not concern criteria for a successful § 2241

petition; rather, it provides whether that petition may be entertained to begin

with."). Relative to jurisdictional considerations, the Wheeler court "conclude[d]

that § 2255 is inadequate and ineffective to test the legality of a sentence" if the

following four conditions are met:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;
>
> (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;
>
> (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and
>
> (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Id.* at 429.

> As part of its analysis, the Wheeler court found that:
>
> it is well established that § 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus [under § 2241]." *Davis v. United States*, 417 U.S. 333, 343 [] (1974). Indeed, "the sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the *same rights* in another and more convenient forum." *Id*. at 344 [] (internal quotation marks omitted) (emphasis supplied).
>
> We also acknowledge that Congress has bestowed "the courts broad remedial powers to secure the historic office of the writ." *Boumediene v. Bush*, 553 U.S. 723, 776 [] (2008). It is "uncontroversial ... that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the

16

erroneous application or interpretation' of relevant law." *Id*. at 779 []
(quoting *INS v. St. Cyr*, 533 U.S. 289, 302 [] (2001)). Habeas corpus
is "above all, an adaptable remedy," and its "precise application and
scope change[ ] depending upon the circumstances." *Id*. We are thus
entrusted with ensuring Appellant has a meaningful opportunity to
demonstrate that he is entitled to relief from his allegedly erroneous
sentence.

*Id.* 426. Specifically considering "sentencing errors," the Wheeler court found that

they fall "within the ambit of the savings clause," as supported by the statutory

language. *Id.* 427.

> The savings clause pertains to one's "detention," and Congress
> deliberately did not use the word "conviction" or "offense," as it did
> elsewhere in § 2255. *See* 28 U.S.C. § 2255(h)(1) (referencing "the
> offense"); *id*. § 2255(f)(1) (referencing "conviction"). *See Russello v.
> United States*, 464 U.S. 16, 23 [] (1983) ("Where Congress includes
> particular language in one section of a statute but omits it in another
> section of the same Act, it is generally presumed that Congress acts
> intentionally and purposely in the disparate inclusion or exclusion."
> (alteration and internal quotation marks omitted)). Detention
> necessarily implies imprisonment. *See Zadvydas v. Davis*, 533 U.S.
> 678, 690 [] (2001) ("Freedom from imprisonment [is freedom] from
> government custody, *detention*, or other forms of physical restraint."
> (emphasis supplied)). Thus, "[t]he text of the [savings] clause ... does
> not limit its scope to testing the legality of the underlying criminal
> conviction." *Brown v. Caraway*, 719 F.3d 583, 588 (7th Cir. 2013).
>
> In addition, the Supreme Court has long recognized a right to
> traditional habeas corpus relief based on an illegally extended
> sentence. *See Nelson v. Campbell*, 541 U.S. 637, 643 [] (2004)
> ("[T]he 'core' of habeas corpus" has included challenges to "the
> duration of [the prisoner's] sentence."). Indeed, one purpose of
> traditional habeas relief was to remedy statutory, as well as
> constitutional, claims presenting "a fundamental defect which
> inherently results in a complete miscarriage of justice" and
> "exceptional circumstances where the need for the remedy afforded
> by the writ of habeas corpus is present." *Davis*, 417 U.S. at 346, []

17

(quoting *Hill v. United States*, 368 U.S. 424, 428 [] (1962)). But if we held that a prisoner was foreclosed from seeking collateral relief from a fundamentally defective *sentence*, and "through no fault of his own, has no source of redress," this purpose would remain unfulfilled. *Jones*, 226 F.3d at 333 n.3. Therefore, we readily conclude that § 2255(e) must provide an avenue for prisoners to test the legality of their sentences pursuant to § 2241, and *Jones* is applicable to fundamental sentencing errors, as well as undermined convictions.

*Id.* 427-28.

Applying this test, the Fourth Circuit allowed a sentenced prisoner to challenge an erroneous career offender sentence via a § 2241 petition. *Lester v. Flournoy*, 909 F.3d 708, 712 (4th Cir. 2018). Finding that (i) the sentence was legal at the time it was imposed, (ii) that the substantive law changed after the prisoner's § 2255 motion and (iii) that he could not satisfy § 2255's gatekeeping provision (*i.e.*, no evidence of actual innocence and the decision relied upon is not of constitutional law), the only question for the Court of Appeals was "whether Lester's misclassification as a career offender, which increased his mandatory Guidelines range from a maximum of 151 months to a minimum of 262, is an error sufficiently grave to be deemed a fundamental defect." *Id.* 712 (quotation marks and citation omitted). The Court held that it was. *Id.*

It is recognized that the Fourth Circuit, like others, distinguishes post-conviction claims involving sentencing errors that arose in a pre-*Booker*, mandatory guidelines context from those that occurred in a post-*Booker*, advisory guidelines context. *Lester*, 909 F.3d at 715 (distinguishing *Wheeler* from *United*

18

*States v. Foote*, 784 F.3d 931 (4th Cir. 2015)); *see Allen v. Ives*, 976 F.3d 863, 868 (9th Cir. 2020) (Order denying petition for rehearing of *Allen v. Ives*, 950 F.3d 1184 (9th Cir. 2020), which held "that a habeas petitioner can be 'actually innocent' of a non-capital sentence for purposes of § 2241"; collecting cases that reflect Circuit split). Mr. Walton respectfully submits the mandatory versus advisory distinction is a false one, or, at least, one that should not be determinative as to eligibility for post-conviction relief in view of the guidelines' longstanding and continuing primacy in the disposition of federal criminal cases.

> **The post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines** and that they remain a meaningful benchmark through the process of appellate review. See *Kimbrough* []. As we have described, "district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* [] (emphasis added). Failing to calculate the correct Guidelines range constitutes procedural error.[…] "In the usual sentencing, ... the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Freeman v. United States* [] (plurality opinion). Even if the sentencing judge sees a reason to vary from the Guidelines, "if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*." *Ibid.* (emphasis added).[…] **That a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing.** Indeed, the rule that an incorrect Guidelines calculation is procedural error ensures that they remain the starting point for every sentencing calculation in the federal system.

*Peugh v. United States*, 569 U.S. 530, 541–42 (2013) (emphasis added).

In Mr. Walton's case, the sentencing court, upon consideration of the government's 5K1.1 motion, imposed a sentence 22 months below the 322-month low end of the career offender guideline range.[7]  The record thus establishes that the sentencing court hewed closely to the guidelines and departed due to a government-sponsored motion — an application that was just as available and applied with equal force pre-*Booker* as it was post-.  In such instances, "advisory" as opposed to "mandatory" is a distinction without a difference.

> The Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious.[…]

> The Commission's statistics demonstrate the real and pervasive effect the Guidelines have on sentencing.  In most cases district courts continue to impose "either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." []  In less than 20% of cases since 2007 have district courts "imposed above- or below-Guidelines sentences absent a Government motion." *Peugh, supra,* [] 133 S.Ct., at 2084; [].  As the Court has recognized, "when a Guidelines range moves up or down, offenders' sentences [tend to] move with it." *Peugh, supra,* [] 133 S.Ct., at 2084; [].  These realities have led the Court to observe that there is "considerable empirical evidence indicating that the Sentencing Guidelines have the intended effect of influencing the sentences imposed by judges. " *Peugh, supra,* [] 133 S.Ct., at 2084.

> **These sources confirm that the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar.  The Guidelines inform and instruct the district court's determination of an appropriate sentence.**  In the usual case, then,

---

[7]  Again, that 300-month sentence was imposed consecutive to the 37-month supervised release violation sentence Mr. Walton was then serving.  It has since been ordered to run concurrent to that 37-month sentence. *See* Note 6.

the systemic function of the selected Guidelines range will affect the sentence.[…]  In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome.

*Molina-Martinez v. United States*, 578 U.S. 189, 197-98 (2016) (addressing satisfaction of Rule 52(b); emphasis added); *Peugh*, 569 U.S. at 544 ("The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing.").

The Third Circuit reveals that limitations on relief for claims such as Mr. Walton's rest less on the merits of the movant's claims, relative to those sentenced after *Booker*, and more on the perceived inability to devise a workable standard and associated concerns about opening the proverbial floodgates.  *United States v. Folk*, 954 F.3d 597, 607 (3d Cir. 2020) ("There is no manageable limit to the types of sentencing errors that would be cognizable […] if an incorrect career-offender enhancement were found to be cognizable.").  Yet, the Third Circuit has already devised a workable rule, one Mr. Walton proposes this Circuit adopt in joining those Circuits that permit § 2241 relief to petitioners who, like Mr. Walton, have confronted procedural obstructions in presenting his sentencing-based claim.

Analyzing *United States v. Addonizio,* 442 U.S. 178 (1979), in the context of assessing collateral review of sentencing errors, the Third Circuit announced a two-part test that speaks to the first and fourth prongs of the *Wheeler* test, *infra*:

"(1) the district court made an objectively ascertainable error (one that does not require courts to probe the mind of the sentencing judge) and (2) the district court materially relied on that error in determining the appropriate sentence." *United States v. Eakman*, 378 F.3d 294, 301 (3d Cir. 2004). So, for instance, as to the first *Wheeler* factor:

> Did the district court, at the time of sentencing, make and materially rely on an objectively ascertainable error based on the settled law of this circuit or the Supreme Court?[8]

Further as to the fourth factor, recognizing *Molina-Martinez* and *Peugh*:

> Due to this retroactive change, does the district court's material reliance on the ascertainable error now present as sufficiently grave to be deemed a fundamental defect?

The record here demonstrates that the sentencing court materially relied on the career offender guideline, even in granting 22 months' relief from the 322-month low end of Mr. Walton's guideline range in recognition of his substantial assistance. Indeed, the 300-month sentence Mr. Walton received was still 52

---

[8] The undersigned has had the experience where a district court recognized the applicability of the career offender guideline but, without much objection from the government, chose not to rely on it when imposing sentence. *See United States v. Ben Tisdale*, Docket No. 3:04-cr-00138-JCH-21 (D. Conn.) (where application of the career offender guideline produced a range of 188-235 months' imprisonment, court sentenced post-*Booker* to mandatory minimum 60 months). Leaving aside any question about "ascertainable error," in such cases the court cannot be said to have materially relied on the subject guideline, let alone to such a degree so as to constitute a grave error warranting relief.

months greater than the low-end of the otherwise applicable range (and 119

months greater than the low-end of the range that would apply today, *see* Note 6).

The career offender guideline application in Mr. Walton's case represents the type

of objectively ascertainable sentencing error resulting from retroactive substantive

changes in the law that should permit an avenue for relief pursuant to 28 U.S.C.

§ 2241.  Respectfully, this Court should revisit its past holdings and join those

Circuits that have expanded § 2241's scope.  Concurrently, this Court should reject

the false "mandatory" versus "advisory" dichotomy in favor of a fundamentally

fair, commonsense approach that accounts for the Guidelines continued place as

the lodestar in the federal sentencing process.[9]

---

[9] Recognizing the nature and extent of the relief Mr. Walton obtained via a reduction in sentence motion (Note 6, *ante*), the avenue for relief sought here changes fundamentally the reconsideration dynamic because it serves to reset the fundamental sentencing calculus.  The question is not the inherently discretionary one of whether "compassionate release" is warranted.  Instead, it is what sentence would the Court imposed but for the objectively ascertainable error, here being a 181-211 month guideline range rather than the 322-387 month range.  If one were to simply again look to the bottom of the range (i.e., set aside substantial assistance considerations) *and* again run the 37-month supervised release term consecutively, that produces a total effective sentence of 218 months' imprisonment, which is both 119 months less than the original effective term and would place Mr. Walton close to release given that he had served more than 170 months (or the equivalent of a greater than 196-month sentence) as of last August (more than six months ago).

## <u>CONCLUSION</u>

For the foregoing reasons, and any others that this Court may find appropriate or just, it is respectfully submitted that after revisiting precedent, this Court remand Mr. Walton's petition to the district court for further findings and action consistent with the rule proposed herein.

Dated: March 15, 2022

Respectfully submitted,

*/s/ Todd A. Bussert*
Todd A. Bussert, CT24328
FROST BUSSERT, LLC
350 Orange Street, Suite 100
New Haven, Connecticut 06511
(203) 495-9790; Fax: (203) 495-9795
tab@frostbussert.com

## <u>CERTIFICATIONS</u>

The undersigned counsel certifies that this brief complies with the type-volume limitations set forth by Second Circuit Local Rule 32.1(a)(4)(A) governing practice before this Court, in that there are 5,816 words in this brief.

The undersigned counsel further certifies that the foregoing has been served on counsel for all parties via the Court's CM/ECF system on the date reflected on the case docket and that electronic copies have been sent to the printer for printing, copying and delivery to the Court.

*/s/ Todd A. Bussert*, CT24328