# 21-2062

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

————

JAMES EARL WALTON,

*Petitioner-Appellant,*

-vs-

WARDEN,

*Respondent-Appellee.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## JOINT APPENDIX

TODD BUSSERT
FROST BUSSERT, LLC
350 Orange Street, Suite 100
New Haven, CT 06511
Tel. (203) 495-9790
Fax (203) 495-9795
Email: tab@frostbussert.com

## **TABLE OF CONTENTS**

Docketing Statement ......................................................... 1

Pro Se Petition................................................................. 5

Memorandum In Support of Motion.................................. 19

Response to Show Cause Order........................................ 39

Order Dismissing Petition................................................ 51

Judgment ....................................................................... 59

Notice of Appeal ............................................................ 60

APPEAL,CLOSED,EFILE,HABEAS

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:18−cv−01993−MPS

| | |
|---|---|
| Walton v. Williams | Date Filed: 12/06/2018 |
| Assigned to: Judge Michael P. Shea | Date Terminated: 08/04/2021 |
| Cause: 28:2241 Petition for Writ of Habeas Corpus (federal) | Jury Demand: None |
| | Nature of Suit: 530 Habeas Corpus (General) |
| | Jurisdiction: U.S. Government Defendant |

**Petitioner**

**James Earl Walton**     represented by     **Todd Allen Bussert**
Frost Bussert LLC
350 Orange Street, Suite 100
New Haven, CT 06511
203−495−9790
Fax: 203−495−9790
Email: tab@frostbussert.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**D.K. Williams**     represented by     **David Christopher Nelson**
U.S. Attorney's Office−NH
157 Church St., 25th Floor
New Haven, CT 06510
203−821−3700
Fax: 203−773−5373
Email: David.C.Nelson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/06/2018 | 1 | PRISCS PETITION for Writ of Habeas Corpus, filed by James Earl Walton. (Attachments: # 1 Exhibit A, # 2 Envelope)(Mendez, D) Modified on 12/17/2018 (Walker, A). (Entered: 12/10/2018) |
| 12/06/2018 | | PRISCS Filing fee received from James E. Walton: $ 5.00, receipt number CTXH00014938. (Mendez, D) (Entered: 12/10/2018) |
| 12/06/2018 | 2 | STANDING PROTECTIVE ORDER Signed by Judge Michael P. Shea on 12/06/2018.(Mendez, D) (Entered: 12/10/2018) |
| 12/06/2018 | 3 | ELECTRONIC FILING ORDER FOR COUNSEL − PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER Signed by Judge Michael P. Shea on 12/06/2018.(Mendez, D) (Entered: 12/10/2018) |
| 12/20/2018 | 4 | MOTION to Transfer to Another District by James Earl Walton. (Attachments: # 1 Envelope)(Murphy, Tatihana) (Entered: 12/26/2018) |
| 04/24/2019 | 5 | ORDER. Attorney Todd Bussert is hereby appointed as CJA counsel for petitioner James Earl Walton. Signed by Judge Michael P. Shea on 4/24/2019. (Guevremont, Nathan) (Entered: 04/24/2019) |
| 05/01/2019 | 6 | MOTION to Withdraw 4 MOTION to Transfer Petition by James Earl Walton. (Attachments: # 1 envelope)(Agati, Kathryn) (Entered: 05/02/2019) |

## JA 1

| 05/01/2019 | 7 | Memorandum of Law in Support of 1 Petition for Writ of Habeas Corpus by James Earl Walton. (Agati, Kathryn) (Entered: 05/02/2019) |
|---|---|---|
| 05/03/2019 | | ORDER. Mr. Walton has filed a 6 motion to withdraw his motion to transfer and 7 memorandum of law in support of his petition for habeas corpus. The Court recently appointed CJA counsel to represent Mr. Walton in this matter. As a result, Mr. Walton may not file documents on his own behalf, and the 6 motion to withdraw is DENIED without prejudice. |
| | | In light of the appointment of CJA counsel, Mr. Walton's 4 motion to transfer is DENIED without prejudice to refiling with the advice of counsel. Within **30 days**, Mr. Walton, through counsel, shall file a statement on the docket indicating whether he wishes to amend his 1 petition and/or renew his 4 motion to transfer. Any amended petition or renewed motion must be filed by **July 1, 2019**. In the interest of efficiency, the Court will not order respondent to show cause why the requested relief should not be granted until Mr. Walton has conferred with counsel and determined whether he wishes to amend his petition. The Clerk is directed to provide a copy of this order via email to respondent's representative, Attorney John Hughes, Office of the United States Attorney. The Court notes, however, that no response from respondent is required at this time. |
| | | Signed by Judge Michael P. Shea on 5/3/2019. |
| | | (Guevremont, Nathan) (Entered: 05/03/2019) |
| 06/17/2019 | 8 | ORDER. The Court notes that Mr. Walton has not filed a statement indicating whether he wishes to amend his petition and/or renew his motion to transfer by the deadline established in the prior order. Nevertheless, Mr. Walton may file any amended petition by **July 1, 2019**. If no amended petition is filed, the Court will issue an order requiring the respondent to show cause why the relief requested in the 1 original petition should not be granted. Signed by Judge Michael P. Shea on 6/17/2019. (Guevremont, Nathan) (Entered: 06/17/2019) |
| 06/17/2019 | | Set Deadlines/Hearings: Amended Petition due by 7/1/2019 (Johnson, D.) (Entered: 06/18/2019) |
| 06/26/2019 | 9 | MOTION for Extension of Time until September 1, 2019 Amended Petition 8 Order,, by James Earl Walton. (Bussert, Todd) (Entered: 06/26/2019) |
| 06/27/2019 | 10 | ORDER. The 9 motion for extension of time to file an amended petition is GRANTED. Mr. Walton may file an amended petition by September 1, 2019. Signed by Judge Michael P. Shea on 6/27/2019. (Guevremont, Nathan) (Entered: 06/27/2019) |
| 06/27/2019 | | Set Deadlines/Hearings: Amended Petition due by 9/1/2019 (Johnson, D.) (Entered: 06/28/2019) |
| 09/05/2019 | 11 | MOTION for Extension of Time until November 1, 2019 To File Amended Petition by James Earl Walton. (Bussert, Todd) (Entered: 09/05/2019) |
| 09/06/2019 | 12 | ORDER. The 11 motion for extension of time until November 1, 2019 to file an amended petition is GRANTED. |
| | | Signed by Judge Michael P. Shea on 9/6/2019. (Hausmann, Amy) (Entered: 09/06/2019) |
| 09/06/2019 | | Set Deadlines/Hearings: Amended Petition due by 11/1/2019 (Johnson, D.) (Entered: 09/09/2019) |
| 01/29/2020 | 13 | ORDER. The deadline for the petitioner to file an amended petition was November 1, 2019, but nothing was filed. If no amended petition is filed by **February 7, 2020**, the Court will issue an order requiring the respondent to show cause why the relief requested in the 1 original petition should not be granted. |
| | | Signed by Judge Michael P. Shea on 1/29/2020. (Hausmann, Amy) (Entered: 01/29/2020) |

**JA  2**

| 01/29/2020 | | Set Deadlines/Hearings: Amended Petition due by 2/7/2020 (Johnson, D.) (Entered: 01/30/2020) |
|---|---|---|
| 02/07/2020 | 14 | MOTION for Extension of Time until April 3, 2020 To File Amended Petition 13 Order, by James Earl Walton. (Bussert, Todd) (Entered: 02/07/2020) |
| 02/10/2020 | 15 | ORDER. The petitioner's 14 motion for extension of time until April 3, 2020 to file an amended petition is GRANTED. In light of the extensions already granted, the Court is unlikely to grant any further extensions of this deadline.<br><br>Signed by Judge Michael P. Shea on 2/10/2020. (Hausmann, Amy) (Entered: 02/10/2020) |
| 02/10/2020 | | Set Deadlines: Amended Petition due by 4/3/2020 (Johnson, D.) (Entered: 02/11/2020) |
| 04/03/2020 | 16 | MOTION to Continue by James Earl Walton. (Bussert, Todd) (Entered: 04/03/2020) |
| 04/08/2020 | 17 | ORDER. Mr. Walton's 16 motion for extension of time until April 17, 2020 to file his amended petition is GRANTED for good cause shown.<br><br>Signed by Judge Michael P. Shea on 4/8/2020. (Hausmann, Amy) (Entered: 04/08/2020) |
| 04/08/2020 | | Set Deadlines: Amended Petition due by 4/17/2020 (Johnson, D.) (Entered: 04/08/2020) |
| 04/20/2020 | 18 | MOTION for Extension of Time by James Earl Walton. (Bussert, Todd) (Entered: 04/20/2020) |
| 04/21/2020 | 19 | ORDER. Mr. Walton's 18 motion for extension of time until April 29, 2020 is GRANTED.<br><br>Signed by Judge Michael P. Shea on 4/21/2020. (Hausmann, Amy) (Entered: 04/21/2020) |
| 04/21/2020 | | Set Deadlines: Amended Petition due by 4/29/2020 (Johnson, D.) (Entered: 04/22/2020) |
| 05/01/2020 | 20 | TRIAL MEMO *in Support of 2241 Motion (Doc. 1)* by James Earl Walton. (Bussert, Todd) (Entered: 05/01/2020) |
| 05/01/2020 | 21 | MOTION for Leave to File *Late Memorandum in Support of 2241 Motion (Doc. 20)* by James Earl Walton. (Bussert, Todd) (Entered: 05/01/2020) |
| 08/07/2020 | 22 | ORDER. The petitioner's 21 motion for leave to file a late memorandum is GRANTED. By **September 14, 2020**, the Government shall show cause why the relief requested under § 2241 in the 20 memorandum should not be granted. The Clerk is directed to provide a copy of this order and the 20 memorandum via email to the respondent's representative, Attorney John Hughes, Office of the United States Attorney.<br><br>Signed by Judge Michael P. Shea on 8/7/2020. (Hausmann, Amy) (Entered: 08/07/2020) |
| 08/07/2020 | | Set Deadlines: Show Cause Response due by 9/14/2020 (Johnson, D.) (Entered: 08/10/2020) |
| 02/18/2021 | 23 | ORDER: The government's response shall be filed by March 22, 2021.<br><br>Signed by Judge Michael P. Shea on 2/17/2021. (Constantine, A.) (Entered: 02/18/2021) |
| 02/22/2021 | 24 | NOTICE of Appearance by David Christopher Nelson on behalf of D.K. Williams (Nelson, David) (Entered: 02/22/2021) |
| 02/22/2021 | 25 | OBJECTION re 20 Trial Memo filed by D.K. Williams. (Attachments: # 1 Exhibit 1)(Nelson, David) (Entered: 02/22/2021) |

**JA 3**

| | | |
|---|---|---|
| 08/02/2021 | 26 | ORDER. For the reasons set forth in the attached, the petition for a writ of habeas corpus is DISMISSED. The Clerk is directed to close this case.<br>Signed by Judge Michael P. Shea on 8/2/2021.(Gait, Emily) (Entered: 08/02/2021) |
| 08/04/2021 | 27 | JUDGMENT filed and entered dismissing case.<br><br>For Appeal Forms please go to the following website:<br>http://www.ctd.uscourts.gov/forms/all–forms/appeals_forms<br>Signed by Clerk on 8/4/21.(Johnson, D.) (Entered: 08/04/2021) |
| 08/04/2021 | | JUDICIAL PROCEEDINGS SURVEY – FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link:<br><br>https://ecf.ctd.uscourts.gov/cgi–bin/Dispatch.pl?survey<br>(Johnson, D.) (Entered: 08/04/2021) |
| 08/23/2021 | 28 | NOTICE OF APPEAL as to 27 Judgment by James Earl Walton. (Bussert, Todd) (Entered: 08/23/2021) |
| 08/26/2021 | 29 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 28 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Robin D. Tabora, Clerk. Documents manually filed not included in this transmission: none (Peterson, M) (Entered: 08/26/2021) |
| 11/23/2021 | 30 | ORDER. The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2) because the Petitioner has not made a "substantial showing of the denial of a constitutional right." The Court does not find that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).<br>Signed by Judge Michael P. Shea on 11/23/2021. (Wong, Qing Wai) (Entered: 11/23/2021) |

**JA 4**

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

United States District Court
District of Connecticut
FILED AT   HARTFORD

12/6 _____ 20 18

Robin D. Tabora, Clerk

By _____

Deputy Clerk

| | |
|---|---|
| JAMES EARL WALTON | ) |
| *Petitioner* | ) |
| | ) |
| v. | ) |
| | ) |
| D.K. WILLIAMS, | ) |
| *Respondent* | ) |

Case No. 3:18CV1993 MPS

*(Supplied by Clerk of Court)*

*(name of warden or authorized person having custody of petitioner)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  (a)  Your full name:  James Earl Walton

    (b)  Other names you have used:  N/A

2.  Place of confinement:

    (a)  Name of institution:  Federal Correctional Institution,

    (b)  Address:  33½ Pembroke Road, Danbury, CT 06811

    (c)  Your identification number:  19466-056

3.  Are you currently being held on orders by:

    ☒ Federal authorities   ☐ State authorities   ☐ Other - explain:

    _____

4.  Are you currently:

    ☐ A pretrial detainee (waiting for trial on criminal charges)

    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime

    If you are currently serving a sentence, provide:

    (a)  Name and location of court that sentenced you:  United States District Court for the Eastern District of North Carolina

    (b)  Docket number of criminal case:  2:07-CR-00017-F1

    (c)  Date of sentencing:  January 7, 2008

    ☐ Being held on an immigration charge

    ☐ Other *(explain):*

    _____

    _____

    _____

## JA 5

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.   What are you challenging in this petition:

☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

XX☒ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☐ Other (explain): _____

_____
_____

6.   Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court:   United States District Court

for the Eastern District of North Carolina

(b)  Docket number, case number, or opinion number:   2:07-CR-00017-F-1

(c)  Decision or action you are challenging (for disciplinary proceedings, specify the penalties imposed):

_____

_____

_____

(d)  Date of the decision or action:   March 28, 2013

## Your Earlier Challenges of the Decision or Action

7.   **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☐ Yes          ☐ No   N/A

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:      N/A

(2)  Date of filing:          N/A

(3)  Docket number, case number, or opinion number:        N/A

(4)  Result:   N/A

(5)  Date of result:      N/A

(6)  Issues raised:      N/A

_____

_____

_____

## JA 6

_____

(b)  If you answered "No," explain why you did not appeal: _____

_____

8.   **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☐ Yes          ☐ No   N/A

(a)  If "Yes," provide:

    (1)  Name of the authority, agency, or court:   N/A _____

    (2)  Date of filing:        N/A

    (3)  Docket number, case number, or opinion number:        N/A

    (4)  Result:        N/A

    (5)  Date of result:        N/A

    (6)  Issues raised:        N/A

(b)  If you answered "No," explain why you did not file a second appeal:        N/A

9.   **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes          ☐ No   N/A

(a)  If "Yes," provide:

    (1)  Name of the authority, agency, or court:   N/A

    (2)  Date of filing:   N/A

    (3)  Docket number, case number, or opinion number:   N/A

    (4)  Result:   N/A

    (5)  Date of result:   N/A

    (6)  Issues raised:        N/A

**JA 7**

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____
_____
_____
_____

(b) If you answered "No," explain why you did not file a third appeal: _____
_____

10.  **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

XX☒ Yes                    ☐ No

If "Yes," answer the following:

(a)   Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

XXX☐ Yes                    ☐ No

If "Yes," provide:

(1) Name of court:  U.S. District Court for the E.D. of NC

(2) Case number:  2:11-CV-0069-F

(3) Date of filing:  2011

(4) Result:  dismissed

(5) Date of result:  March 28, 2013

(6) Issues raised:  Petitioner improperly sentenced as a
career offender under U.S.S.G. Section 4B1.2(b)

_____
_____
_____
_____

(b)   Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes                    XX☒ No

If "Yes," provide:

(1) Name of court:  N/A

(2) Case number:  N/A

(3) Date of filing:  N/A

(4) Result:  N/A

(5) Date of result:  N/A

(6) Issues raised:  N/A

_____
_____

**JA 8**

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(c)  Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:  Petitioner is relying on a retroactive change in the law, occurring after the filing of his first Section 2255 motion, which renders his career offender sentence fundamentally defective. See United States v. Wheeler, 886 F3d 415, 419 (4th Cir. 2018) (allowing petitioner to proceed via Section 2255(e)'s savings clause based on the same claim raised here)

11.  **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes          X X ☒ No

If "Yes," provide:

(a)  Date you were taken into immigration custody:  N/A

(b)  Date of the removal or reinstatement order:  N/A

(c)  Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☐ No          N/A

If "Yes," provide:

(1)  Date of filing:  N/A

(2)  Case number:  N/A

(3)  Result:  N/A

(4)  Date of result:  N/A

(5)  Issues raised:  N/A

(d)  Did you appeal the decision to the United States Court of Appeals?

☐ Yes          ☐ No          N/A

If "Yes," provide:

(1)  Name of court:  N/A

(2)  Date of filing:  N/A

(3)  Case number:  N/A

**JA 9**

(4) Result:    N/A

(5) Date of result:    N/A

(6) Issues raised:    N/A

12. **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes    ☐ No    N/A

If "Yes," provide:

(a) Kind of petition, motion, or application:    N/A

(b) Name of the authority, agency, or court:    N/A

(c) Date of filing:    N/A

(d) Docket number, case number, or opinion number:    N/A

(e) Result:    N/A

(f) Date of result:    N/A

(g) Issues raised:    N/A

## Grounds for Your Challenge in This Petition

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** PETITIONER'S CAREER OFFENDER SENTENCE IS FUNDAMENTALLY DEFECTIVE

**JA 10**

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
    See pages 9A-9C

(b) Did you present Ground One in all appeals that were available to you?
☐ Yes          XX ☐ No

**GROUND TWO**:     N/A

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
                    N/A

(b) Did you present Ground Two in all appeals that were available to you?
☐ Yes          ☐ No
                    N/A

**GROUND THREE**:          N/A

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
                    N/A

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes          ☐ No          N/A

**JA  11**

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:**     N/A

_____

_____

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
     N/A

_____

_____

_____

_____

_____

(b) Did you present Ground Four in all appeals that were available to you?

☐ Yes         ☐ No      N/A

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:   Claim is based on retroactive change in the law

_____

_____

_____

**Request for Relief**

15. State exactly what you want the court to do:   Petitioner requests re-sentenc-ing without career offender enhancement.

_____

_____

_____

Page 9 of 10

**JA 12**

PARAGRAPH 13(a) (continued from page 8 of 10)

SUPPORTING FACTS:

1. In 2007, the petitioner, pursuant to a plea agreement, plead guilty to distributing cocaine and possessing a firearm in connection with a drug trafficking offense, in the United States District Court for the Eastern District of North Carolina.

2. On January 7, 2008, the petitioner was sentenced as a career offender pursuant to U.S.S.G. Section 4B12(b), based on his 1999 North Carolina conviction for drug trafficking, and a term of imprisonment of 300 months was imposed.

3. In 2011, the united States Court of Appeals for the Fourth Circuit held in United States v. Simmons, 649 F3d 237 (4th Cir. 2011, en banc), that under North Carolina's sentencing scheme, offenses which carry a maximum penalty of 12 months, absent hypothetical enhancements, are not felonies under federal law.

4. In 2011, the petitioner filed his initial motion under 28 U.S.C. Section 2255, arguing that under United States v. Simmons, supra, he was entitled to re-sentencing without the application of the career offender guidelines because his 1999 North Carolina drug trafficking conviction was not a felony drug offense, where the maximum term of imprisonment that he could have received under North Carolina law was 10 months imprisonment. In reply to the petitioner's response to its motion to dismiss the Section 2255 motion, the government conceded that the

9A

JA 13

1999 conviction was not a felony in light of Simmons, and that the petitioner should not have been sentenced as a career offender. (See Exhibit A, attached). The sentencing court ultimately dismissed the Section 2255 motion on the ground that the petitioner waived his right to collaterally attack his sentence, and, alternatively, on the ground that the Simmons decision did not apply retroactively in a collateral proceeding. See James Earl Walton v. United States, 2013 U.S. Dist. LEXIS 44383 (E.D.N.C., filed March 28, 2013).

5. On February 21, 2018, the Supreme Court held that a guilty plea and accompanying waivers, by itself, does not bar a defendant from challenging an unconstitutional judgement. See Class v. United States, 538 U.S. ___ (2018) and Malvo v. Mathena, 893 F3d 265 (4th Cir. 2018) (sustaining collateral relief in light of Class based on retroactive court decision which rendered sentence unconstitutional despite any asserted waiver in connection with guilty plea)

6. After the sentencing court denied the petitioner's Section 2255 motion, and after the Fourth Circuit Court of Appeals denied the petitioner's request for a certificate of appealability, the Fourth Circuit Court of Appeals ruled that its prior decision in Simmons, supra, does apply retroactively in a collateral proceeding. See Miller v. United States, 735 F3d 141 (4th Cir. 2013).

7. The petitioner satisfies the requirements of the savings clause of Section 2255(e), because a retroactive change in the

9B

**JA 14**

law, occurring after the filing of his first Section 2255 motion rendered his career offender sentence constitutionally and fundamentally defective. See United States v. Wheeler, 886 F3d 415, 419 (4th Cir. 2018) (allowing petitioner to proceed via Section 2255(e)'s savings clause on a Simmons claim) and United States v. Jones, 1996 U.S. App. LEXIS 10325 (4th Cir. 1996) (citing a number of cases from the Fourth Circuit which hold that a defendant has a constitutional right not to be sentenced on inaccurate information)

8. Pursuant to Michael Norwood v. D. K. Williams, 2018 U.S. Dist. LEXIS 3360 (filed Jan. 9, 2018, D. Conn., Shea, J.) and 28 U.S.C. Section 1404(a), the petitioner requests, in the interests of justice, that this petition be transferred to the Eastern District of North Carolina because all the records in this case are located in that court. See Norwood, supra (transferring habeas petition to District of New Jersey because all the records are located in that court). Moreover, the petitioner has made a strong showing that he is entitled to relief via Section 2255(e)'s savings clause on his Simmons claim. See Young v. Antonelli, 2018 U.S. Dist. LEXIS 139515 (D. SC, filed August 16, 2018) (recommendation by Magistrate Judge that respondent's motion to dismiss Wheeler claim filed pursuant to Section 2255(e)'s savings clause be denied).

9C

**JA 15**

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

### Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

September 17, 2018

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: September 17, 2018

_James Earl Walton_
*Signature of Petitioner*

N/A

*Signature of Attorney or other authorized person, if any*

JA 16

PETITIONER'S EXHIBIT A
**************************

While *Simmons* alters the legal characterization of Walton's prior state felony conviction,[1] it is not a newly discovered fact for purposes of the one year limitation period under § 2255(f)(4). *See Lo v. Endicott*, 506 F.3d 572, 575 (7th Cir. 2007) (holding that a state court decision modifying substantive law does not constitute a "factual predicate" triggering the one year limitation period under § 2244(d)(1)(D), because it "was not a fact within [the petitioner's] own litigation history that changed his legal status"); *E.J.R.E. v. United States*, 453 F.3d 1094 (8th Cir. 2006) (intervening Court of Appeals decision was not a new "fact" rendering claim timely under § 2255(f)(4); *Shannon v. Newland*, 410 F.3d 1083, 1088-89 (9th Cir. 2005) (distinguishing *Johnson* on the ground that "the state court decision in question was a decision in the petitioner's *own case*. It did not merely establish an abstract proposition of law; rather, it directly eliminated Johnson's legal status as a convict. . . . In this case, by contrast, the California Supreme Court's decision . . . was unrelated to [the petitioner's] case and had no direct effect on his legal status") (original emphasis); *Scott v. United States*, 2011 WL 1100239 (E.D. Mich.) ("a new interpretation of a statute is a matter of law, not a matter of fact, and, therefore, cannot constitute a newly discovered fact under § 2255(f)[(4)]").

This Court has already rejected Walton's timeliness argument in a previous case where it held that "the Fourth Circuit's decision in <u>Simmons</u> does not constitute a 'fact supporting [petitioner's] claim.'" *United States v. Timothy Wayne Hardison*, Nos. 4:11-CV-196-FL and 4:08-CR-77-FL-2, DE-103 at 4 (attached as Exhibit 1). This Court concluded in *Hardison* that, "[b]ecause petitioner has failed to present to the court any additional facts supporting his claim to serve as a tolling point, and has failed to demonstrate that his petition was timely under any other

---

[1] The government concedes that under *Simmons*, Walton's conviction for Possession of Schedule II With Intent to Sell or Deliver was not punishable by more than one year imprisonment and therefore cannot serve as a predicate for career offender status. *See* USSG §4B1.2(b).

2

**JA 18**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JAMES EARL WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 3:18-cv-01993-MPS |
| | ) | |
| D.K. WILLIAMS, | ) | May 1, 2020 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF PETITION
## FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

Mr. Walton having moved *pro se* for a Petition For A Writ of Habeas Corpus Under 28

U.S.C. § 2241 (Instant Case ("IC") Doc. 1), this memorandum is offered in support thereof.

Where the United States Attorney's Office for the Eastern District of North Carolina, the district

from whence Mr. Walton's conviction arises, has previously conceded that *United States v.

Simmons*, 649 F.3d 237 (4th Cir. 2011) invalidates one of the two predicates used, in 2008, to

support application of the career offender guideline, the principal issue raised through the instant

motion is jurisdiction, that is, whether the Court enjoys jurisdiction under 28 U.S.C. § 2241 to

grant relief. *See Dhinsa v. Krueger*, 917 F.3d 70, 82 (2d Cir. 2019) ("The threshold savings

clause analysis does not replace a full merits analysis, however; they are not co-extensive.").

Respectfully, jurisdiction should be found and relief granted so as to correct a manifest injustice.

## PROCEDURAL BACKGROUND

The instant motion follows on two prior 2255 motions Mr. Walton filed in the Eastern

District of North Carolina, where he pled guilty to and was sentenced for the instant offense.

Both 2255 motions were denied.

**JA  19**

## A.     The Underlying Conviction

On **August 15, 2007**, Mr. Walton was charged through a four-count indictment returned in the Eastern District of North Carolina under *United States v. James Earl Walton*, Docket No. 2:07-CR-17-F-1. Doc. 1.

On **January 7, 2008**, Mr. Walton pled guilty to two of the four counts. Specifically, he pled guilty to conspiracy to distribute and to possess with the intent to distribute more than five kilograms of cocaine in violation of 18 U.S.C. §§ 841(a)(1) and 846 as well as to use of and carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Doc. 23. Through the plea agreement, Mr. Walton also admitted to violating the terms of his supervised release in another EDNC matter, Docket No. 2:00-CR-22-BO-1. *Id.*

The plea agreement contains a waiver provision:

> 2.     The Defendant agrees:
>
> > […]c.  To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 18 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

Doc. 23 at 2.

A presentence report was prepared. As set forth therein, Mr. Walton was held accountable for a conspiracy involving six kilograms of powder cocaine and 500 grams of cocaine. PSR ¶44. With respect to potential penalties, Count One subjects Mr. Walton to 10 years to life imprisonment, and Count Three subjects Mr. Walton to five years to life

**JA  20**

imprisonment, consecutive to any other term of imprisonment. *Id.* ¶¶55-56. With a TOL of 33 (BOL 34 plus two-level role enhancement and three-level acceptance reduction) and CHC IV, Mr. Walton's guideline range is 188-235 months' imprisonment as to Count One, which, accounting for the five-year consecutive mandatory minimum, produced a final range of 248-295 months. *Id.* ¶¶21, 50, 52, 56; *see* U.S.S.G. (2007 ed.). However, a determination that Mr. Walton is a career offender resulted in a TOL of 34 and CHC VI, results in a range of 262-327 months which, accounting for the mandatory minimum, produces a final range of 322-387 months. PSR ¶57.[1]

The career offender finding is based on Mr. Walton's 1999 state (NC) conviction for Possession of a Schedule II Controlled Substance With Intent to Sell or Deliver and on the 2000 federal conviction for Possession With Intent to Distribute Crack Cocaine (Cocaine Base) for which he was on supervised release at the time of his arrest. Doc. 49 at 2 (citing PSR and noting no objection). As to the state conviction, which appears to concern conduct when Mr. Walton was 20 years old and followed a guilty plea less than two months after his arrest, Mr. Walton received a sentence of "8 to 10 months custody, suspended, 36 months probation." PSR ¶15.

On **February 12, 2008**, the Honorable Terrence W. Boyle, U.S.D.J. sentenced Mr. Walton to 37 months' imprisonment for the supervised release violation.

When Mr. Walton appeared for sentencing in the new criminal matter, on **May 29, 2008**, the supervised release sentence was "active," that is, Mr. Walton was then serving it. Doc. 35 at 11-12. In support of its substantial assistance motion, the government offered: "Defendant has been debriefed on at least two occasions and provided detailed information concerning his drug trafficking activities since being released from prison in 2005. Defendant identified other people

---

[1] The career offender range is thus 74-92 months' higher than the otherwise applicable range.

involved in drug trafficking, and it is anticipated that one of those individuals will be indicted federally based in part on information provided by Defendant." Doc. 28 (not sealed). The Honorable James C. Fox, S.U.S.D.J. imposed a total effective sentence of, *inter alia*, 300 months' imprisonment: 240 months as to Count One and a consecutive sentence of 60 months as to Count Three. Doc. 35 at 14; Doc. 30. The sentence, 22 months below the low-end of the career offender/MM range (*ante*), was ordered consecutive to the supervised release violation sentence Mr. Walton was then serving. Doc. 35 at 17.[2]

Judgement entered, on **May 29, 2008**. Doc. 30. No appeal was taken.

According to the BOP's Inmate Locator, Mr. Walton's projected release date is February 21, 2031—two weeks shy of his 53rd birthday.

## B.  First 2255 Motion

On or about **December 5, 2011**, Mr. Walton, then confined at FCI Bennettsville (SC), filed *pro se* a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By Person In Federal Custody. Doc. 36 (docketed 12/6/11). Mr. Walton's prayer for relief centered on the Fourth Circuit's then recent holding in *United States v. Simmons*, which found that "a prior conviction under North Carolina law is punishable by more than one year of imprisonment only if the defendant's conviction, based on his individual offense characteristics and criminal history, allowed for such a sentence"—the implication being that certain North Carolina drug felonies, including the aforementioned 1999 state conviction, do not qualify as sentencing enhancement predicates. *Id.* at 3; *United States v. Simmons*, 649 F.3d 237, 244 (4th Cir. 2011).[3]

---

[2] In other words, accounting for the supervised release violation sentence, 337 months or 28 years and one month.

[3] In his *pro se* submission, Mr. Parks cited *United States v. Simmons*, 635 F.3d 140 (4th Cir. 2011), which was decided on February 16, 2011. However, the Fourth Circuit granted rehearing *en banc* and, on August 17, 2011, issued *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011).

Through its motion to dismiss, including supporting memorandum, the government advanced four reasons why the 2255 motion should not be heard.

1. The plea agreement's waiver provision, *supra*, barred the motion. Doc. 39 at 2-3.

2. Where 18 U.S.C. § 2253(f)(3) relies on new rights the Supreme Court announces and where *Simmons* rests on *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), which was decided on June 14, 2010, the motion was untimely. *Id.* 3.

3. *Carachuri-Rosendo* did not announce a new substantive rule that could be applied retroactively (recognizing that the Fourth Circuit then had that very issue before it in *Powell*, *infra*). *Id.* 4-5.

4. Having not taken an appeal, Mr. Walton procedurally defaulted on his claim, and no exception existed because he was unable to demonstrate cause or actual innocence. *Id.* 5-7. In this regard, the government contended that *United States v. Rodriguez*, 553 U.S. 377, 389 (2008), which *Carachuri-Rosendo v. Holder* cites and which was argued in *Simmons* as a basis for overturning *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005), was decided before Mr. Walton was sentenced. *Id.* 6 (argument that *Harp* is inapplicable and "Walton was therefore not a career offender, could and should have been made at the time of Walton's sentencing and on direct appeal").[4]

---

In moving to dismiss Mr. Walton's motion, the government cited to the latter, as did the parties in the balance of the pleadings. Doc. 38 (motion) and 39 (memorandum); *see also* Doc. 46 (response to motion to dismiss), 47 (reply), 48 (surreply).

[4] *Rodriguez* was decided on May 19, 2018, ten days before Mr. Walton was sentenced. The government's argument begs two points. First, if defense counsel's failure to argue that *Rodriguez* precluded a career offender determination inured to Mr. Walton's detriment, then counsel arguably rendered constitutionally ineffective representation. Second, if *Rodriguez*'s import was as clear in 2008 as the government claimed in 2011, then the validity of the plea agreement is implicated, namely allowing Mr. Walton to proceed to sentencing pursuant to what the government presumptively understood was an erroneous guideline range.

JA 23

Through appointed counsel, Mr. Walton responded to the government's motion to dismiss. Doc. 46; *see* Doc. 43 (appearance). Relative to *Simmons*, which overturned *Harp*, Mr. Walton offered:

> Under the *Simmons* court's definition of a felony offense, Mr. Walton's prior North Carolina convictions on November 30, 1999 for simple possession of cocaine and possession with intent to sell and deliver a schedule II substance cannot serve as predicates for the career offender enhancement because Mr. Walton could not have been imprisoned for more than a year for those conviction. Mr. Walton's Presentence Report details his criminal history prior to his arrest for these charges. It reflects the convictions which were incorrectly deemed North Carolina felonies: simple possession of cocaine, for which Mr. Walton received six to eight months in custody and possession with the intent to sell and deliver a controlled substance committed on October 9, 1999, for which Mr. Walton received eight to ten months custody. The North Carolina judgments are attached to this Motion as Exhibit 1, pages 1 - 6. These prior convictions are either Class I or Class H felonies. With respect to his Class H felony, Mr. Walton was never sentenced as anything greater than a level two offender and he was sentenced in the presumptive range. Therefore, with respect to all his prior convictions, Mr. Walton never faced a term of imprisonment exceeding one year. N.C. Gen. Stat. §15A-1340.17.

Doc. 46 at 4. It was thus Mr. Walton's position that the applicable TOL for purposes of sentencing was 34, not 37. *Id.* 5. (As set forth above, the otherwise applicable TOL was 33.).

Relative to the government's claim as to timeliness, Mr. Walton submitted that *Simmons*, not *Carachuri-Rosendo*, controlled. In this regard, he argued that raising the claim earlier would have resulted in it being "summarily rejected." Doc. 46 at 8 (citing a series of EDNC opinions so holding). So too, Mr. Walton argued that raising the claim on direct appeal before *Simmons*, which he submitted, like *Carachuri-Rosendo*, announced a new substantive rule of criminal law, "would have been without legal justification." *Id.* 9, 16-18. Finally, Mr. Walton submitted that equitable tolling was warranted. *Id.* 9-16.

In reply, the government submitted that unlike the cases on which Mr. Walton relied, his prior state conviction had not been vacated. Doc. 47 at 1. Further, while **conceding that under**

**JA 24**

*Simmons*, *Mr. Walton's prior state conviction "cannot serve as a predicate for career offender status,"* the government argued that "*Simmons* alters the legal characterization of Walton's prior state felony conviction, it is not a newly discovery fact for purposes of the one year limitation period under § 2255(f)(4)." *Id.* 2 (emphasis added); *see* Doc. 49 at 2 n.1 (Order; recognizing concession).

On March 28, 2013, Senior Judge Fox granted the government's motion to dismiss. Doc. 49. The Court found the plea agreement's waiver provision applicable. *Id.* 4. It further found the 2255 motion untimely, considering when *Carachuri-Rosendo* was decided. Id. 5. The Court added that *Carachuri-Rosendo* announced a procedural, not substantive rule, and therefore was not retroactive. *Id.* 5-6 (citing *United States v. Powell*, 691 F.3d 554 (4th Cir. 2012)). Finally, the Court found that Mr. "Walton has failed to show the existence of an 'extraordinary circumstances'" so as to warrant equitable tolling. *Id.* 6-7.

The Court denied a certificate of appealability. Doc. 49 at 8. Mr. Walton appealed. Doc. 51. Finding that Mr. Walton "has not made the requisite showing necessary," the Court of Appeals denied a certificate of appealability and dismissed the appeal, on **September 24, 2013**. Doc. 54.

On or about **May 12, 2014**, Mr. Walton moved for leave to "relation back," that is, to amend the 2255 motion. Doc. 58. The Court (Fox, SJ) denied the motion. Doc. 62.

**C.     3582(c)(2) Motion**

On or about May 22, 2015, Mr. Walton, who was then housed at FCI Danbury, moved for a reduction in sentence pursuant to 18 U.S.C. § 3582 and Amendment 782. Doc. 63.[5] The

---

[5] The one-page letter that the Court docketed references an enclosed motion. However, no motion is docketed.

Federal Defender's Office was appointed to represent Mr. Walton. Doc. 64. However, on December 18, 2015, it moved to withdraw, offering: "After a thorough review of Mr. Walton's case file for drug retroactivity issues, including notice to the defendant of our analysis and conclusions, the undersigned does not intend to present any motions before the court." Doc. 65. On January 5, 2016, the Court (Fox, SJ), denied the 3582 motion **because "[t]he offense level resulted from application of the career offender guideline."** Doc. 67 (emphasis added).

### D.        Second 2255 Motion

On or about **June 23, 2016**, Mr. Walton filed a second *pro se* 2255 motion. Doc. 70 (docketed 6/27/16), 72 (re-docketed 7/18/16 after Mr. Walton re-submitted, signed, per the Court's order, Doc. 71). The motion is grounded on the claim that "Petitioner no longer qualifies as a career criminal (in) light (of) Johnson v. United States, 135 S.Ct. 2551 (2015)," specifically "prior convictions which were considered crimes of violence are indeed no longer considered crimes of violence." Doc. 72 at 4.

The government moved to dismiss what it characterized an unauthorized successive 2255 motion. Doc. 76, 77. Mr. Walton responded that if deemed unauthorized, the motion should be referred to the Court of Appeals. Doc. 79. The Court (Fox, SJ) dismissed the 2255 motion, on **September 16, 2016**. Doc. 80. Mr. Walton appealed. Doc. 82.

Finding that Mr. Walton failed to make the showing necessary to support of certificate of appealability, the Court of Appeals dismissed the appeal, on **February 28, 2017**. Doc. 87. In so doing, it noted *Johnson*'s inapplicability because Mr. Walton's career offender status is "premised on two prior controlled substance convictions." *Id.* 2; *but see* Doc. 49 (judicial recognition of government conceding that under *Simmons*, career offender inapplicable).

**E.     The Instant Motion**

On or about September 17, 2018, Mr. Walton filed the instant Petition For A Writ of Habeas Corpus Under 28 U.S.C. § 2241.  IC Doc. 1 (docketed 12/6/18).

**G.     FIRST STEP Act Motion**

On or about February 5, 2019, Mr. Walton filed *pro se* a Motion For Reduction Of Sentence Pursuant To The FIRST STEP Act.  Doc. 90 (docketed 2/18/19).  On the government's motion, the Federal Defender's Office was appointed to represent Mr. Walton.  Doc. 94, 95.  However, on September 20, 2019, it moved to withdraw, offering: "After a thorough review of Mr. Walton's case file for First Step Act issues, including contemporaneous notice to the defendant of undersigned's analysis and conclusions, the undersigned does not intend to present any motions before the Court."  Doc. 97.  *But cf. United States v. Allen*, 384 F. Supp. 3d 238 (D. Conn. 2019) (granting relief to defendant sentenced to 322 months' imprisonment for conspiracy to distribute 5 kilograms or more of powder cocaine and 50 grams or more of cocaine base); United States v. Richardson, No. 3:99-CR-264-8 (VAB), 2019 WL 4889280 (D. Conn. Oct. 3, 2019) (granting relief to defendant sentenced to life imprisonment for conspiring to possess heroin, cocaine, and cocaine base).  The Court (Boyle, CJ) granted the motion.  Doc. 98.[6]

On September 30, 2019, Mr. Walton moved *pro se* to hold the FIRST STEP Act motion in abeyance.  Doc. 99 (docketed 10/11/19).  Interpreting the motion as a motion to withdraw without prejudice, the Court (Boyle, CJ) granted the motion, on January 13, 2020, allowing that Mr. Walton "may amend and refile it at his discretion."  Doc. 101.

---

[6]  On or about March 31, 2017, Senior Judge Fox retired into inactive senior status.  On March 5, 2019, Mr. Walton's EDNC matter was updated to add Chief Judge Boyle, before whom Mr. Walton had appeared previously (*see ante*).

**JA  27**

On January 26, 2020, Mr. Walton filed *pro se* a Petition To Amend Motion For

Reduction Of Sentence Pursuant To The FIRST STEP Act, which was docketed.  Doc. 102

(docketed 2/4/20).

On March 13, 2020, the Petition To Amend was submitted to Chief Judge Boyle, and the

government's response is pending.  Doc. 103, 105.

## JURISDICTION

The law in this Circuit speaks to jurisdiction under 28 U.S.C. § 2255 and 28 U.S.C.

§ 2241:

> Title 28 U.S.C. §§ 2241 and 2255 each create mechanisms for a federal prisoner
> to challenge his detention, but the two sections offer relief for different kinds of
> perceived wrongs.  Section 2255 [...] is the appropriate vehicle for a federal
> prisoner to challenge the *imposition* of his sentence. *See Chambers v. United
> States,* 106 F.3d 472, 474 (2d Cir.1997).  Section 2241 by contrast is the proper
> means to challenge the *execution* of a sentence.  In a § 2241 petition a prisoner
> may seek relief from such things as, for example, the administration of his parole,
> computation of his sentence by parole officials, disciplinary actions taken against
> him, the type of detention, and prison conditions in the facility where he is
> incarcerated.  *See Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir. 2001).  In
> addition, § 2241(c)(3) also grants federal courts authority to entertain habeas
> petitions from prisoners "in custody in violation of the Constitution or laws or
> treaties of the United States."  This language appears to create an overlap between
> § 2255 and § 2241.  But we have ruled that federal prisoners generally must
> invoke § 2255 instead of § 2241 to challenge a sentence as violating the U.S.
> Constitution or laws. *Jiminian,* 245 F.3d at 147; *Triestman v. United States,* 124
> F.3d 361, 373 (2d Cir. 1997).

*Adams v. United States*, 372 F.3d 132, 134–35 (2d Cir. 2004) (emphasis in the original).

As to the "limited exception to this general rule" that § 2255 actions are the province of

challenges to the imposition of one's sentence, "the 'savings clause' of § 2255 permits prisoners

to file a petition pursuant to § 2241 for challenges to the imposition of a sentence where § 2255

is 'inadequate or ineffective' and 'failure to allow for collateral review would raise serious

constitutional questions.'  *Triestman* [...]."  *Middleton v. Schult*, 299 F. App'x 94, 95 (2d Cir.

2008); ); *accord Amir v. Barr*, 2020 WL 1529727, at *3 (N.D.N.Y. Mar. 31, 2020) ("'savings clause' […] remedy is narrow and exists solely 'to preserve habeas corpus for federal prisoners in those extraordinary instances where justice demands it'"; quoting *Triestman*).

Through the instant motion, Mr. Walton does not seek to raise a claim that was previously available to him but that he failed to raise. The § 2255 motion filed in 2011 argued unambiguously that *Simmons* invalidated one of the two career offender predicates which underlie Mr. Walton's sentence—the 1999 North Carolina drug conviction. Indeed, the government conceded that under *Simmons*, Mr. Walton does not qualify as a career offender. However, not until 2013, the year after Mr. Walton's § 2255 motion and certificate of appealability were rejected, did the Fourth Circuit declare that *Simmons* announced a new substantive rule and, therefore, is retroactive. *Miller v. United States*, 735 F.3d 141 (4th Cir. 2013) ("*Simmons* did announce a substantive rule when it applied *Carachuri's* principles and then narrowed the class of offenders and range of conduct that can be subject to punishment").[7]

The instant *pro se* motion relies *United States v. Wheeler*, 886 F.3d 419 (4th Cir. 2018), *cert. denied*, — U.S. —, 139 S. Ct. 1318 (2019), which recognized § 2241 jurisdiction to correct sentencing error under the "savings clause." Doc. 1. Relative to jurisdictional considerations, the Wheeler court "conclude[d] that § 2255 is inadequate and ineffective to test the legality of a sentence" if the following four conditions are met:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;
>
> (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;

---

[7] The Miller court distinguished *Powell*, *supra*, as implicating *Carachuri*, *supra*, and an issue of procedure. 735 F.3d at 147.

(3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and

(4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Id.* at 429.

Applying this test, the Court of Appeals allowed a sentenced prisoner to challenge a career offender sentence via a § 2241 motion. *Lester v. Flournoy*, 909 F.3d 708, 712 (4th Cir. 2018). Finding that the sentence was legal at the time it was imposed, that the substantive law changed after the prisoner's § 2255 motion and that he could not satisfy § 2255's gatekeeping provision (*i.e.*, no evidence of actual innocence and the decision relied upon is not of constitutional law), the only question for the Court was "whether Lester's misclassification as a career offender, which increased his mandatory Guidelines range from a maximum of 151 months to a minimum of 262, is an error sufficiently grave to be deemed a fundamental defect." *Id.* 712 (quotation marks and citation omitted). The Court held that it did. *Id.*[8]

It is recognized that this Court has declined to extend *Triestman* to permit jurisdiction over a claim of "sentencing innocence." *Salvagno v. Williams*, No. 3:17-CV-2059 (MPS), 2019 WL 109337, at *8 (D. Conn. Jan. 4, 2019), *motion for relief from judgment denied*, No. 3:17-CV-2059 (MPS), 2019 WL 2720758 (D. Conn. June 27, 2019) (finding "no Supreme Court or Second Circuit precedent that has broadened the 'actual innocence' gateway in habeas cases to

---

[8] Central to the Lester court's holding is the distinction that the career offender sentence was imposed under the pre-*Booker* mandatory guidelines system rather than the post-*Booker* advisory system. 909 F.3d at 715. In this regard, it relied on *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015) which found no Circuit decision "whereby a challenge to one's change in career offender status, originally determined correctly under the advisory Guidelines, is cognizable on collateral review." *See also United States v. Folk*, 954 F.3d 597 (3d Cir. 2020). Thus, notwithstanding that Mr. Foote had been sentenced under a 262-327 month career offender guideline range (**and sentenced to 262 months**), as opposed to the otherwise applicable 151-188 month range, the Fourth Circuit deemed the error was not cognizable. *Id.* 940.

admit a claim that challenges only the application of a Guidelines enhancement not itself

involving innocence of a prior offense") (citing *Poindexter v. Nash*, 333 F.3d 372, 382 (2d Cir.

2003)); *accord Smith v. Warden*, No. 3:18-CV-1111 (AWT), 2019 WL 1877074, at *3 (D. Conn.

Apr. 26, 2019).

Notably, in *Salvagno*, this Court recognized *Graziano v. United States*, 83 F.3d 587 (2d

Cir. 1996) and "the 'complete miscarriage of justice' standard [that] should apply to challenges

to the application of the Sentencing Guidelines raised for the first time in a § 2255 motion." *Id.*

590 (citing *Femia v. United States,* 47 F.3d 519, 525 (2d Cir.1995)).  Elucidating what

circumstances might merit such relief, the Court of Appeals held:  "the determinative question on

a § 2255 sentence challenge is not whether the original sentence was based on a Guidelines range

that subsequent events rendered inapplicable, but whether maintenance of the sentence in light of

those events manifests a complete miscarriage of justice." *United States v. Hoskins*, 905 F.3d 97,

106 (2d Cir. 2018) (finding claim not cognizable where sentence imposed was within otherwise

applicable Guideline range), *cert. denied*, — U.S. —, 140 S. Ct. 55 (2019); *see United States v.*

*Timmreck*, 441 U.S. 780, 783 (1979).

But for the fact that the 8-10 month *suspended* North Carolina state sentence Mr. Walton

sustained in 1999 qualified as a career offender predicate in 2008 (but not since 2011), his

guideline range (accounting for the five-year consecutive mandatory minimum to which he was

subject) would have been 248-295 months rather than 322-387 months.  Respectfully, that 74-92

month difference, standing alone, represents a manifest injustice.  "[T]o say that this disparity

had no or limited impact on the sentence would mean that the Guidelines were discounted among

the sentencing factors to the point of being almost ignored." *United States v. Velasquez*, No. 08-

CR-56 (BMC), 2016 WL 4148316, at *3 (E.D.N.Y. Aug. 4, 2016) (addressing the disparity between 70-87 months and 188-235 months).

Yet, the harm to Mr. Walton is not limited to the above differences. Designation as a "drug" offender, as opposed to a "career," renders one eligible for relief available through retroactive changes to the drug guidelines, such as Amendment 782. Were Mr. Walton properly seen as a drug offender, the two-level reduction that Amendment 782 wrought, as associated with Count One of his 2008 conviction, is 151-188 months, which, accounting for the consecutive five-year mandatory, renders him eligible for a 211-248 range. The low end of that range **89 months (seven years and five months)** less than the non-guidelines sentence the Court imposed (and **111 months** below the career offender range employed at sentencing).

Relative to questions that implicate § 2255's gatekeeping provisions, "[i]n *Teague v. Lane,* 489 U.S. 288 [] (1989), the Supreme Court held that-with two minor exceptions-only decisions that establish new substantive rules are to be applied retroactively to cases on collateral review." *Love v. Menifee*, 333 F.3d 69, 73 (2d Cir. 2003). In *Miller*, the Fourth Circuit agreed "that a *Teague* exception applies because *Simmons* announced a new substantive rather than procedural rule." *Miller*, 735 F.3d at 145.

> The *Simmons* decision changed the way this Court determines whether prior convictions for certain lower-level North Carolina felonies are punishable by more than one year in prison. This Court applied *Carachuri* to create a new substantive rule. *Simmons* requires the court to look at how much prison time the defendant was exposed to given his own criminal history at the time he was sentenced and any aggravating factors that were actually alleged against him.[…] The fact that this Court relied on *Carachuri* in reaching its decision in *Simmons* does not mean that *Carachuri* itself announced a new rule of substantive criminal law, only that this Court applied *Carachuri* in such a way as to announce such a rule. *Simmons* altered "the class of persons that the law punishes," *Schriro,* 542 U.S. at 353, 124 S.Ct. 2519, and announced a substantive rule that is retroactively applicable.

*Id.* 145–46 (comparing to other, Supreme Court decisions that announced substantive rules).

14

**JA 32**

As noted, *ante*, the Fourth Circuit thereafter found that a prisoner can obtain relief under § 2241 subject to the satisfaction of a four-factor test. *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018) ("The savings clause is different—it does not concern criteria for a successful § 2241 petition; rather, it provides whether that petition may be entertained to begin with."). In this regard:

> [I]t is well established that § 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus [under § 2241]." *Davis v. United States*, 417 U.S. 333, 343 [] (1974). Indeed, "the sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the *same rights* in another and more convenient forum." *Id.* at 344 [] (internal quotation marks omitted) (emphasis supplied).
>
> We also acknowledge that Congress has bestowed "the courts broad remedial powers to secure the historic office of the writ." *Boumediene v. Bush*, 553 U.S. 723, 776 [] (2008). It is "uncontroversial ... that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Id.* at 779 [] (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 [] (2001)). Habeas corpus is "above all, an adaptable remedy," and its "precise application and scope change[ ] depending upon the circumstances." *Id.* We are thus entrusted with ensuring Appellant has a meaningful opportunity to demonstrate that he is entitled to relief from his allegedly erroneous sentence.

*Id.* 426.

Specifically considering "sentencing errors," the Wheeler court found that they fall "within the ambit of the savings clause," as supported by the statutory language. *Id.* 427.

> The savings clause pertains to one's "detention," and Congress deliberately did not use the word "conviction" or "offense," as it did elsewhere in § 2255. *See* 28 U.S.C. § 2255(h)(1) (referencing "the offense"); *id.* § 2255(f)(1) (referencing "conviction"). *See Russello v. United States*, 464 U.S. 16, 23 [] (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration and internal quotation marks omitted)). Detention necessarily implies imprisonment. *See Zadvydas v. Davis*, 533 U.S. 678, 690 [] (2001) ("Freedom from imprisonment [is freedom] from government custody, *detention*, or other forms of physical restraint." (emphasis supplied)). Thus, "[t]he text of the

[savings] clause ... does not limit its scope to testing the legality of the underlying criminal conviction." *Brown v. Caraway*, 719 F.3d 583, 588 (7th Cir. 2013).

In addition, the Supreme Court has long recognized a right to traditional habeas corpus relief based on an illegally extended sentence. *See Nelson v. Campbell*, 541 U.S. 637, 643 [] (2004) ("[T]he 'core' of habeas corpus" has included challenges to "the duration of [the prisoner's] sentence."). Indeed, one purpose of traditional habeas relief was to remedy statutory, as well as constitutional, claims presenting "a fundamental defect which inherently results in a complete miscarriage of justice" and "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is present." *Davis*, 417 U.S. at 346, [] (quoting *Hill v. United States*, 368 U.S. 424, 428 [] (1962)). But if we held that a prisoner was foreclosed from seeking collateral relief from a fundamentally defective *sentence*, and "through no fault of his own, has no source of redress," this purpose would remain unfulfilled. *Jones*, 226 F.3d at 333 n.3. Therefore, we readily conclude that § 2255(e) must provide an avenue for prisoners to test the legality of their sentences pursuant to § 2241, and *Jones* is applicable to fundamental sentencing errors, as well as undermined convictions.

*Id.* 427-28. Respectfully, the foregoing is persuasive and should control here, namely as to the deciding the Fourth Circuit's substantive change in the law.

Recognizing that the Fourth Circuit and others distinguish between errors arising in pre-versus post-*Booker* career offender sentences (*see* Note 8), Mr. Walton respectfully submits the distinction is a false one, or, at least, one that should not be determinative as to eligibility for post-conviction relief in view of the guidelines' longstanding and continuing primacy in the disposition of federal criminal cases.

The post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review. See *Kimbrough* []. As we have described, "district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* [] (emphasis added). Failing to calculate the correct Guidelines range constitutes procedural error.[…] "In the usual sentencing, ... the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Freeman v. United States* [] (plurality opinion). Even if the sentencing judge sees a reason to vary from the Guidelines, "if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*." *Ibid.* (emphasis added).[…] That a district court may ultimately sentence a given

16

**JA  34**

defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing. Indeed, the rule that an incorrect Guidelines calculation is procedural error ensures that they remain the starting point for every sentencing calculation in the federal system.

*Peugh v. United States*, 569 U.S. 530, 541–42 (2013).

Where the record establishes, as it does here, that the sentencing court hewed closely to the guidelines, "advisory" as opposed to "mandatory" is a distinction without a difference.

The Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious.[…]

The Commission's statistics demonstrate the real and pervasive effect the Guidelines have on sentencing. In most cases district courts continue to impose "either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." [] In less than 20% of cases since 2007 have district courts "imposed above- or below-Guidelines sentences absent a Government motion." *Peugh, supra,* [] 133 S.Ct., at 2084; []. As the Court has recognized, "when a Guidelines range moves up or down, offenders' sentences [tend to] move with it." *Peugh, supra,* [] 133 S.Ct., at 2084; []. These realities have led the Court to observe that there is "considerable empirical evidence indicating that the Sentencing Guidelines have the intended effect of influencing the sentences imposed by judges. " *Peugh, supra,* [] 133 S.Ct., at 2084.

These sources confirm that the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar. The Guidelines inform and instruct the district court's determination of an appropriate sentence. In the usual case, then, the systemic function of the selected Guidelines range will affect the sentence.[…] In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome.

*Molina-Martinez v. United States*, — U.S. — 136 S. Ct. 1338, 1345–46 (2016) (addressing satisfaction of Rule 52(b)); *Peugh v. United States*, 569 U.S. at 544 ("The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing.")

In *Folk* (Note 8, *supra*), the Third Circuit reveals that limitations on relief for claims such as Mr. Walton's rest less on the merits of the movant's claims, relative to those sentenced after *Booker*, but more on the perceived inability to devise a workable standard. *United States v. Folk*,

954 F.3d at 607 ("There is no manageable limit to the types of sentencing errors that would be cognizable […] if an incorrect career-offender enhancement were found to be cognizable."). Yet, ironically, the Third Circuit itself defines a workable rule. Analyzing *United States v. Addonizio,* 442 U.S. 178 (1979), in the context of assessing collateral review of sentencing errors, the Third Circuit announced a two-part test: "(1) the district court made an objectively ascertainable error (one that does not require courts to probe the mind of the sentencing judge) and (2) the district court materially relied on that error in determining the appropriate sentence." *United States v. Eakman*, 378 F.3d 294, 301 (3d Cir. 2004). This test is readily adoptable to situations such as Mr. Walton's: Accounting for a retroactive change in the law, did the sentencing court materially rely on an erroneous career offender guideline range?[9] Where the sentencing court, upon consideration of the government's 5K1.1 motion, imposed a sentence 22 months below the 322-month low end of Mr. Walton's guideline range — a seven percent reduction from the low-end of the range — it can be said to have materially relied on the career offender guideline.[10]

As Attorney Bailey (Note 9) points out, affording "career offenders," such as Mr. Walton, the opportunity to pursue § 2241 relief, does not risk opening the proverbial floodgates. *Run-On Sentence* at 1518. Sentencing Commission data establishes that "career offenders" consistently account for about three percent of federal offenders (but 11 percent of the federal prison population given their sentence lengths).

---

[9] As much as the undersigned might wish to take credit for this proposed remedy, it comes from John Patrick Bailey, *Run-On Sentence: Remedies for Erroneous Career Enhancements*, 65 Duke L.J. 1478, 1514-1518 (2016).

[10] Again, that 300-month sentence was imposed consecutive to the 37-month supervised release violation sentence Mr. Walton was then serving.

18

**JA 36**



There were 75,836 federal criminal cases reported to the Commission during fiscal year 2014.[39]  Of the 67,672 cases in which the Commission received complete guideline application information, 2,269 (3.4%) offenders were sentenced as career offenders.  As demonstrated in the chart below, offenders sentenced under the career offender guidelines over the past ten years have consistently accounted for about three percent of federal offenders sentenced each year.

### KEY FINDINGS

- Career offenders are sentenced to long terms of incarceration, receiving an average sentence of more than 12 years (147 months).

- As a result of the lengthy sentences imposed, career offenders now account for over 11 percent of the total BOP population.

- Career offenders are increasingly receiving sentences below the guideline range, often at the request of the government.

USSC, *Report To The Congress:  Career Offender Sentencing Enhancements* at 18 (Aug. 2016).

Important in this regard is the career offender provisions' disproportionate impact on minority

defendants, particularly African-American males, like Mr. Walton:

> In 2000, there were 1,279 offenders subject to the career offender provisions, which resulted in some of the most severe penalties imposed under the guidelines. Although Black offenders constituted just 26 percent of the offenders sentenced under the guidelines in 2000, they were 58 percent of the offenders subject to the severe penalties required by the career offender guideline.  **Most of these offenders were subject to the guideline because of the inclusion of drug trafficking crimes in the criteria qualifying offenders for the guideline**.… Commentators have noted the relative ease of detecting and prosecuting offenses that take place in open-air drug markets, which are most often found in impoverished minority neighborhoods (Tonry, 1995), which suggests that <u>African-Americans have a higher risk of conviction for a drug trafficking crime than do similar White drug traffickers</u> (Tonry, 1995; Blumstein, 2000).

USSC, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal*

*Criminal Justice System I Achieving the Goals of Sentencing Reform*, 133-34 (Nov. 2004)

(emphasis added); *see Report To The Congress* at 19 ("In fiscal year 2014, Black offenders

accounted for more than half (59.7%) of offenders sentenced under the career offender guideline"); id. ("In 2014, nearly three-quarters (74.1%) of career offenders were convicted of a drug trafficking offense and would have been sentenced pursuant to §2D1.1.").

In closing, Mr. Walton offers this from Attorney Bailey: "[C]ourts should weigh finality against interests in justice and fundamental fairness. After all, 'without justice, finality is nothing more than a bureaucratic achievement.'" *Run-On Sentence* at 1518 (quoting *Gilbert v. United States*, 640 F.3d 1293, 1337 (11th Cir. 2011) (en banc) (Hill, J., dissenting)).

\* \* \*

WHEREFORE, Mr. Walton prays the Court find jurisdiction and grant relief to this inarguable drug, but not, career offender.

Respectfully submitted,

BY:        */s/ Todd Bussert*       
              Todd Bussert, CT24328
              FROST BUSSERT LLC
              350 Orange Street, Suite 100
              New Haven, CT 06511
              (203) 495-9790; Fax: (203) 495-9795
              tab@frostbussert.com

## CERTIFICE OF SERVICE

I hereby certify that on May 1, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

          */s/ Todd Bussert*          
          Todd A. Bussert

**JA 38**

Case 3:18-cv-01993-MPS Document 25 Filed 02/22/21 Page 1 of 6

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES EARL WALTON,<br>    *Plaintiff*, | No. 3:18-cv-1993 (MPS) |
| v. | |
| D.K. WILLIAMS,<br>    *Defendant*. | February 22, 2021 |

### <u>GOVERNMENT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE</u>

The Government hereby responds to the Court's order to show cause why Walton's

habeas corpus petition should not be granted.  The Court should reject this petition because a

District Court in the Eastern District of North Carolina has already ruled against Walton on the

issue raised in this petition.  Thus, res judicata and/or collateral estoppel bar this action and the

Court should dismiss the petition.[1]

### I.    Legal Background

This habeas corpus action was filed on December 6, 2018.  Doc. #1.  In the petition,

Walton stated "Petitioner is relying on a retroactive change in the law, occurring after the filing

of his first Section 2255 motion, which renders his career offender sentence fundamentally

defective."  Doc. #1, pg. 5.  Walton later states in his petition, as his sole ground for relief:

"Petitioner's career offender sentence is fundamentally defective."  *Id*. at 6 (capitalization

omitted).  On May 1, 2020, after various motions, Walton filed, via counsel, a memorandum of

law arguing that Walton was improperly considered to be a career offender.  Doc. #20.

---

[1] As set forth herein, the Government believes that this petition should be dismissed because of res judicata and/or collateral estoppel, and the Government has therefore confined its arguments to this issue.  Should the Court wish to reach the substantive argument of the petition, the Government requests permission to file a supplemental brief on those issues.

1

**JA 39**

In Eastern District of North Carolina, however, Walton was also filing motions to take himself outside of the career offender category. On January 23, 2020 (while this action was pending), he filed a motion for reduction of sentence pursuant to the First Step Act and noted that, "a reduction in his sentence, pursuant to the 'First Step Act of 2018' will likely obviate the need for any habeas applications related to the career offender designation no longer being applicable to him." *U.S. v. Walton*, 2:07-cr-17-F-1, doc. #101, pg 11. Walton then amended his EDNC petition on February 4, 2020, and stated that he satisfied the savings clause because "a retroactive change in the law, occurring after the filing of his first Section 2255 motion rendering *his career offender sentence constitutionally and fundamentally defective*." *Id*. at doc. #102, pg. 2 (emphasis added). Walton's EDNC petition, therefore, concerned the same issue as the instant petition.

The United States opposed Walton's EDNC habeas petition on August 4, 2020 (after his memorandum of law was filed in the instant case). *Id*. at doc. #109. The Government argued that the First Step Act did not apply to Walton because "his drug conspiracy conviction was limited to powder cocaine." *Id*. at doc. #109, pg. 2. The Government further argued that Walton was not entitled to relief under § 2241 because he was unable to meet the Fourth Circuit's four-part test set forth in *U.S. v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). *Id*. at doc. #109, pg. 6.

On October 7, 2020, the District Court in the Eastern District of North Carolina denied Walton's petition. *Id*. at doc. #112. The Court held that, "since defendant was charged with and pleaded guilty to a charge involving powder cocaine, not crack cocaine, he is not entitled to relief under the First Step Act." *Id*. at doc. #112, pg. 3. The Court went on to reject Walton's savings clause argument, stating, "Even if the Court construes this amended filing as a motion pursuant to 28 U.S.C. § 2241, the motion fails as a matter of law. Defendant challenges the validity, not

**JA 40**

the execution, of his sentence. Thus, defendant generally must seek relief under § 2255. Defendant may file a habeas petition under § 2241 only if the collateral relief typically available under § 2255 is inadequate or ineffective to test the legality of his detention." *Id*. at doc. #112, pg. 3 (citations and internal quotation marks omitted).

Finally, the Court held that Walton was not eligible for the savings clause under Fourth Circuit law and, therefore, the Court lacked jurisdiction over the petition. *Id*. at doc. #112, pg. 4. Relevant to this analysis, the District Court specifically held that, under *United States v. Wheeler*, 886 F.3d 415; Walton had not established a right to relief. As the District Court explained:

> Defendant fails to satisfy the prongs of this test. Defendant asserts that he is entitled to relief due to a change in substantive law based on the *Simmons* opinion entered on August 17, 2011, which was determined to apply retroactively in the *Miller* opinion entered on August 21, 2013. *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011); *Miller v. United States*, 735 F.3d 141, 144 (4th Cir. 2013). Defendant's prior § 2255 motion was not resolved by the Fourth Circuit Court of Appeals until October 3, 2013 [DE 54], which was after the Fourth Circuit decided *Miller*, 735 F.3d.[2] Therefore, defendant is not able to satisfy the second prong of the "savings clause" test and his argument fails as a matter of law.

*Id*. at doc. #112, pg. 4.

Walton appealed the District Court in the Eastern District of North Carolina's denial of his habeas corpus petition. *Id*. at doc. #113. Presently, Walton has filed his "Informal Brief" with the Fourth Circuit. *U.S. v. Walton*, 20-7555, "Informal Opening Brief" dated 11/16/2020. The Fourth Circuit has not yet addressed Walton's appeal.

---

[2] The Fourth Circuit decided *Miller* on August 21, 2013, which was approximately six weeks *prior* to the resolution of Walton's § 2255 petition, which was rejected by the Fourth Circuit on October 3, 2013, *Walton*, 2:07-cr-17-F-1, doc. #54. *See also U.S. v. Walton*, 13-6616, doc. #10 (4th Cir. Oct. 3, 2013) (same – opinion was published on both the Circuit Court and District Court dockets). As the Fourth Circuit concluded in its October 3, 2013, opinion concerning Walton's § 2255 petition: "We have independently reviewed the record and conclude that Walton has not made the requisite showing" that "both that the dispositive procedural ruling is debatable, and that the motion states a debatable claim of the denial of a constitutional right." *Walton*, 13-6616, doc. #10, pg. 2. Thus, in addition the fact that *Miller* was decided before Walton's appeal, the Circuit Court independently reviewed the record in Walton's appeal; the Circuit Court was certainly aware of its prior rulings, especially one so close in time.

3

**JA 41**

Walton has not filed any additional briefing with this Court following the EDNC District Court's rejection of his § 2255 / § 2241 petition, specifically on the ground that *Wheeler* did not apply to Walton's situation.

## II.     The Habeas Corpus Petition pending before this Court

The current motion states: "The instant *pro se* motion[3] relies on *United States v. Wheeler*, 886 F.3d 419 (4th Cir. 2018), *cert. denied*, – U.S. –, 139 S. Ct. 1318 (2019), which recognized § 2241 jurisdiction to correct sentencing error under the 'savings clause.'" Doc. #20, pg. 11. Specifically, the current motion focuses on the interplay between the *Miller* and *Simmons* decisions. Doc. #20, pg. 11

## III.    Relevant Law

"The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (citations and internal quotation marks omitted). As a general matter, for res judicata to apply, "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id*. at 285 (alternation added); *see also Navin v. Wells Fargo Bank, N.A.*, 199 F. Supp. 3d 646, 660 (D. Conn. 2016).

Collateral Estoppel is a narrower form of preclusion, focusing on issues rather than claims. *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997). "A party is collaterally estopped from raising an issue in a proceeding if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous

---

[3] Although the motion was filed *pro se*, the memorandum was filed by appointed counsel.

**JA 42**

proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id*. (citations and internal quotation marks omitted).

## IV.     Res Judicata and Collateral Estoppel bars the Instant Petition

In the instant case, Walton claims that the *Wheeler* decision permits him to raise his claim regarding career offender status under § 2241. Specifically, Walton claims, citing *Miller*, that, "not until 2013, the year after Mr. Walton's § 2255 motion and certificate of appealability were rejected, did the Fourth Circuit declare that *Simmons* announced a new substantive rule and, therefore, is retroactive." Doc. #20, pg. 11. In the Eastern District of North Carolina, however, a District Court Judge, considering the exact same argument, with the same parties, and under the same facts, explicitly rejected the argument that Walton's argument was viable under *Wheeler*. Indeed, the Eastern District of North Carolina explained that "Defendant's prior § 2255 motion was not resolved by the Fourth Circuit Court of Appeals until October 3, 2013 [DE 54], *which was after the Fourth Circuit decided Miller*, 735 F.3d. Therefore, defendant is not able to satisfy the second prong of the 'savings clause' test and his argument fails as a matter of law." *Walton*, 2:07-cr-17-F-1, doc. #112, pg. 4 (emphasis added).

Walton may disagree (and is currently airing his disagreement to the Fourth Circuit), but the issue of whether *Wheeler's* saving clause applies, as it relates to Walton's claims regarding *Simmons* and *Miller*, has been decided in the EDNC litigation. Regarding res judicata, the EDNC litigation involved an adjudication on the merits, the same parties (or parties in privity, as between the United States and the Warden of FCI Danbury),[4] and the claim raised in this action

---

[4] Government officials sued in their official capacity, as well as governmental agencies, are considered to be the same party or in privity with the United States. *Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 417 (E.D.N.Y. 2010) (collecting cases).

## JA 43

was raised – and decided – in the prior action.  Thus, res judicata applies to this instant petition.

Similarly, regarding collateral estoppel, Walton has raised the identical issue in both the instant

litigation and the EDNC litigation, the *Wheeler / Simmons / Miller* issue was decided in the

EDNC litigation, Walton and the United States had the opportunity to be heard on this issue, and

the EDNC District Court's resolution of this issue was necessary for a final judgment.  Thus,

collateral estoppel also applies to the instant petition.  Further, the Court should not entertain

forum shopping, given that Walton has previously raised this issue in a different district and is

currently litigating this issue before a different circuit.

## V.    Conclusion

Walton raised the exact issue pending before the Court in this case in his EDNC

litigation.  There, the Court decided the issue against him.  Given these facts, the Court should

apply res judicata and/or collateral estoppel and dismiss this petition.

JOHN H. DURHAM,
UNITED STATES ATTORNEY

By:    /S/ David C. Nelson
        David C. Nelson (ct25640)
        Assistant U.S. Attorney
        157 Church Street, 24th Floor
        New Haven, Connecticut 06510
        Tel:    (203) 821-3700
        Fax:    (203) 773-5373
        David.C.Nelson@usdoj.gov

## **CERTIFICATION**

I hereby certify that on February 22, 2021, a copy of the foregoing was filed
electronically.  Notice of this filing was sent by e-mail to all parties by operation of the Court's
electronic filing system.  Parties may access this filing through the Court's system.

/S/ David C. Nelson
David C. Nelson (ct25640)
Assistant United States Attorney

**JA  44**

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:07-CR-17-BO-1

UNITED STATES OF AMERICA    )
    )
v.    )    O R D E R
    )
JAMES WALTON    )

This cause comes before the Court on defendant's *pro se* motion for a reduced sentence pursuant to the First Step Act. [56-1]. For the reasons that follow, defendant's motion for a reduced sentence is denied.

## BACKGROUND

Defendant pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and one count of using and carrying firearms during and in relation to a drug-trafficking offense, [DE 22], and was sentenced on May 29, 2008 to a total term of three hundred months' imprisonment and five years of supervised release. [DE 30]. Defendant now seeks a reduction in his sentence pursuant to Section 404 of the First Step Act.[1]

In August 2010, Congress enacted the Fair Sentencing Act, Pub. L. No. 11-220, 124 Stat. 2372, modifying the statutory penalties for certain crack offenses. The Fair Sentencing Act established new thresholds for mandatory minimum sentences. For example, a defendant previously found responsible for at least fifty grams of crack faced a mandatory minimum of ten years' imprisonment; the Fair Sentencing Act raised the ten-year mandatory minimum threshold

---

[1] The Office of the Federal Public Defender was appointed pursuant to 19-SO-3, but was permitted to withdraw after it determined it would not be filing any motions on defendant's behalf. [DE 95, 98].

to 280 grams. The Fair Sentencing Act, however, was not made retroactive, so it was inapplicable to individuals who had already been sentenced and who were no longer on direct review. In December 2018, Congress enacted the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which—among other things—made the Fair Sentencing Act's new crack thresholds retroactively applicable to defendants who had been sentenced prior to August 3, 2010.

DISCUSSION

The First Step Act authorizes courts to impose reduced sentences "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. 115-391, 132 Stat. 5194, § 404(b). A "covered offense" is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a). But the First Step Act also provides that courts shall not reduce a sentence if it "was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 or if a previous motion made under this section to reduce a sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." *Id.* § 404(c). The First Step Act also makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.* In other words, if a defendant committed a crack offense prior to August 3, 2010, the statutory penalties for which were modified by the Fair Sentencing Act, and that defendant did not already receive the benefit of the Fair Sentencing Act or have a prior motion under Section 404 of the First Step Act denied on the merits, the defendant is facially eligible for a reduced sentence.

As defendant's offense relates solely to powder cocaine, it is not a "covered offense." *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020). Defendant claims that his offense is

2

covered because, in the presentence investigation report, "a marijuana equivalent was used to determine the total quantity of drugs since the multi-object drug conspiracy consisted of both powder cocaine and cocaine base." [DE 110]. However, in the analysis of determining a "covered offense," the Court looks at the offenses for which defendant pleaded guilty. *See Gravatt*, 954 F.3d at 263–64 (considering that the defendant "*pled guilty* to knowingly and willfully conspiring with others to unlawfully possess with intent to distribute [  ] 50 grams or more of crack cocaine and 5 kilograms or more of powder cocaine" and stating that "we must decide whether [defendant] was convicted of a 'covered offense' *where he was charged* conjunctively with conspiring to distribute both powder cocaine and crack cocaine" (emphasis added)). Therefore, since defendant was charged with and pleaded guilty to a charge involving powder cocaine, not crack cocaine, he is not entitled to relief under the First Step Act.

In his motion to amend his motion for reduction in sentence, defendant argues that he satisfies the requirements of the "savings clause" of 28 U.S.C. § 2255(e). Even if the Court construes this amended filing as a motion pursuant to 28 U.S.C. § 2241, the motion fails as a matter of law. Defendant challenges the validity, not the execution, of his sentence. Thus, defendant generally must seek relief under § 2255. *See United States v. Poole*, 531 F.3d 263, 270 (4th Cir. 2008); *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000) (per curiam); *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). Defendant "may file a habeas petition under § 2241 only if the collateral relief typically available under § 2255 'is inadequate or ineffective to test the legality of his detention.'" *Prousalis v. Moore*, 751 F.3d 272, 275 (4th Cir. 2014) (quoting the "savings clause" of 28 U.S.C. § 2255(e)); *see also In re Vial*, 115 F.3d at 1194 n.5 ("[T]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief

3

**JA 48**

under that provision [ ] or because an individual is procedurally barred from filing a § 2255 motion." (citations omitted)).

Under the "savings clause" test announced in Wheeler, section 2255 relief is "inadequate or ineffective" to test the legality of a sentence when:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). If defendant cannot satisfy the "savings clause" test, the court lacks jurisdiction to consider the petition on the merits. *Id.* at 423; *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) (per curiam).

Defendant fails to satisfy the prongs of this test. Defendant asserts that he is entitled to relief due to a change in substantive law based on the *Summons* opinion entered on August 17, 2011, which was determined to apply retroactively in the *Miller* opinion entered on August 21, 2013. *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011); *Miller v. United States*, 735 F.3d 141, 144 (4th Cir, 2013). Defendant's prior § 2255 motion was not resolved by the Fourth Circuit Court of Appeals until October 3, 2013 [DE 54], which was after the Fourth Circuit decided *Miller*. 735 F.3d. Therefore, defendant is not able to satisfy the second prong of the "savings clause" test and his argument fails as a mater of law.

## CONCLUSION

For the above reasons, defendant's motion for a reduction in sentence and his motion to amend his motion for a reduction in sentence [DE 101, 102] are DENIED.

4

SO ORDERED, this ___ day of October, 2020.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE

JA **50**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES EARL WALTON,<br>      Petitioner,<br><br>    v.<br><br>D.K. Williams,<br>      Respondent. | No. 3:18-cv-1993 (MPS) |

## RULING ON PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner James Earl Walton was sentenced to a 300-month term of imprisonment in North Carolina for conspiracy to distribute and to possess with the intent to distribute more than five kilograms of cocaine and for using and carrying firearms during and in relation to a drug-trafficking crime.  He is currently serving his sentence at FCI Danbury with a projected release date of February 2031.[1]  Walton commenced this habeas corpus action pursuant to 28 U.S.C. § 2241, challenging his sentence enhancement as a result of his designation as a career offender. For the reasons set forth below, this Court lacks jurisdiction to entertain Walton's § 2241 petition.  Therefore, the petition is DISMISSED.

## I.    BACKGROUND

The Court assumes familiarity with the factual and procedural history of this case, stretching back to August 15, 2007, when Walton was indicted in the Eastern District of North Carolina. *USA v. Walton*, 2:07-cr-0017-BO-1, ECF No. 1.  Since his sentencing on May 29, 2008, Walton has challenged his conviction in in the Eastern District of North Carolina on the following occasions: first, in 2011 under 28 U.S.C. § 2255; second, in 2015 under 18 U.S.C. §

---

[1] Federal Bureau of Prisons, Find an inmate; https://www.bop.gov/inmateloc/ (last visited July 31, 2021).

**JA  51**

3582; third, in 2016 under § 2255; fourth, in 2020 under the First Step Act; and finally in 2021 under the First Step Act. *Id.* at ECF Nos. 36, 63, 72, 101. Walton has not obtained any relief as a result of his challenges.

Walton brought the present petition *pro se* in December 2018 seeking relief under § 2241. ECF No. 1. Counsel was appointed to represent Walton, and a memorandum in support of the § 2241 petition was filed. Walton asserts that there is jurisdiction to entertain his petition because the issue falls within the limited exception to the general rule that prisoners must use § 2255, rather than § 2241, to challenge the constitutionality of a conviction or sentence. ECF No. 20 at 10. Specifically, Walton argues that his sentence was imposed as a result of a "sentencing error" and should thus be reviewable under § 2241 so as to correct a manifest injustice. *Id.* at 1.

## II.    LEGAL STANDARDS

Section 2255 permits collateral challenges to the constitutionality of the imposition of a federal sentence and is the proper vehicle for such challenges. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States … may move the court which imposed the sentence to vacate, set aside or correct the sentence."); *see Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003) ("Section 2255 … is the proper vehicle when the federal prisoner seeks to challenge the legality of the *imposition* of a sentence by a court.") (citation and internal quotation marks omitted, emphasis in original). Section 2241, on the other hand, permits a prisoner to challenge the execution of a sentence, "such as calculations by the Bureau of Prisons of the credit to be given for other periods of detention, or decisions to deny parole … or conditions of confinement." *Poindexter*, 333 F.3d at 377 (citations omitted).

The Second Circuit has recognized a narrow exception in which a prisoner can challenge the imposition of a sentence under § 2241.

> Where relief through § 2255 is unavailable as a procedural matter, and the failure to allow for collateral review would raise serious constitutional questions, …we have interpreted § 2255's exception for "inadequate or ineffective" remedy as making an exception to the general rule that a federal prisoner must use § 2255 instead of seeking a writ of habeas corpus under § 2241.…  In order to fit within this exception authorizing a petition under § 2241 for a claim that is within the substantive scope of § 2255, … [t]he application not only must show that relief is procedurally unavailable under § 2255, but also must assert a claim of actual innocence that (a) is provable on the existing record, and (b) could not have effectively been raised at an earlier time.

*Id.* at 378 (citations, internal quotation marks, and alterations omitted); *see also* 28 U.S.C. § 2255(e) ("An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."); *see also Triestman v. United States*, 124 F.3d 361, 363 (2d Cir. 1997) ("Ben Gary Triestman may be innocent of the crime of which he was convicted. Prior to bringing this petition, he had no effective opportunity to raise his claim of actual innocence.  While we find that § 2255 is not available to him, we do not believe that, in enacting the AEDPA, Congress intended to deny Triestman a forum in which to have his claim heard.  Indeed, to assume that Congress did so intend would be to imperil the constitutional validity of the AEDPA.  We hold that, in such circumstances, § 2255 is inadequate and/or ineffective to test the legality of Triestman's detention, and that Triestman is therefore entitled to raise his claim of actual innocence in a petition for a writ of habeas corpus [under § 2241].").

If the petitioner's claim does not fall within the exception, then the court lacks subject matter jurisdiction to entertain the merits of the § 2241 petition. *See Dhinsa v. Krueger,* 917 F.3d

**JA 53**

70, 81 (2d Cir. 2019) ("Because the savings clause articulates a jurisdictional requirement, a court adjudicating a § 2241 petition must confirm that the savings clause can be applied *at all* before proceeding with a full merits review of the petitioner's claims.") (citation omitted, emphasis in original).

III.    <u>**DISCUSSION**</u>

Walton does not argue that he has asserted a claim of actual innocence so as to fall within the narrow exception that has been recognized by the Second Circuit. Instead, he argues that he was subjected to a fundamental sentencing error because a change in the law, made retroactive by the Court of Appeals that reviewed his conviction, no longer qualified him for a career offender enhancement. *See United States v. Simmons*, 649 F.3d 237, 247 (4th Cir. 2011) (rehearing en banc) (concluding that a state conviction that was "for only non-aggravated, first-time marijuana possession … was not punishable by a term of imprisonment exceeding one year, which is reserved for repeat offenders.") (internal quotation marks omitted); *see also Miller v. United States*, 735 F.3d 141, 147 (4th Cir. 2013) (applying the *Simmons* substantive rule retroactively to vacate the petitioner's conviction and remand with instructions to grant the § 2255 petition).

Under Walton's theory, this Court enjoys jurisdiction under the § 2255 exception to consider the constitutionality of the imposition of his sentence in light of the retroactive change in the law. The "74-92 month difference" in his sentence, as a result of the career offender enhancement, "represents a manifest injustice[,]" according to Walton. ECF No. 20 at 13. Walton relies on case law from the Fourth Circuit that he urges the Court to follow. *Id.* at 15-16. In the Fourth Circuit, the exception allowing § 2241 petitioners to challenge the imposition of a sentence is not limited, as it is in the Second Circuit, to claims of actual innocence. The Fourth

4

**JA 54**

Circuit has concluded that the exception extends to fundamental sentencing errors when the following conditions are satisfied:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018).

Walton argues that the Fourth Circuit's standard as established in *Wheeler*, and not the actual innocence standard, "should control here[.]" ECF No. 20 at 16. I disagree. First, the Second Circuit's standard is obviously binding and I am unaware of any case within the Second Circuit that has extended the exception for § 2241 petitions aimed at sentencing errors to permit review of anything other than a claim of actual innocence. *See, e.g., Dhinsa*, 917 F.3d at 81 (limiting the exception to actual innocence); *Darby v. U.S.*, 508 Fed. App'x 69, 71 (2d Cir. 2013) ("The Supreme Court has made clear that the actual innocence exception is very narrow and is concerned with actual as compared to legal innocence.... The exception, therefore, does not apply where the petitioner merely makes a legal argument.... Despite this established principle, Darby makes an essentially legal argument that he is innocent of the sentencing enhancement because the district court misclassified his predicate offenses under the Guidelines. This argument is insufficient to trigger the actual innocence exception.") (citations, internal quotation marks, and alterations omitted); *Roccisano v. Menifee*, 293 F.3d 51, 57 (2d Cir. 2002) (limiting the exception to actual innocence); *Smith v. Warden*, No. 3:18-cv-1111 (AWT), 2019 WL 1877074, at *1-*2 (D. Conn. April 26, 2019) (declining to extend actual innocence exception to a § 2241 petition challenging the petitioner's designation as a career offender despite petitioner's

**JA 55**

reliance on law from the Sixth Circuit and stating that "[t]he Second Circuit has never extended the actual innocence exception to this situation"). The Second Circuit's standard is well-established and I lack authority to extend the exception beyond the parameters defined by that standard.

In any event, the Fourth Circuit has already affirmed the decision of the U.S. District Court for the Eastern District of North Carolina – Walton's sentencing court – that his claim does not fall within the § 2255 exception even as that exception is construed in the Fourth Circuit. In Walton's fourth attempt at relief, he argued that under *Wheeler*, he "satisifie[d] the requirements of the savings clause of Section 2255(e), because a retroactive change in the law, occurring after the filing of his first Section 2255 motion render[ed] his career offender sentence constitutionally and fundamentally defective." *Walton*, 2:07-cr-0017-BO-1, ECF No. 102. The district court disagreed and concluded that Walton had failed to satisfy the prongs of the *Wheeler* standard. *Walton*, 2:07-cr-0017-BO-1, ECF No. 112 at 4. The court explained that by the time the Fourth Circuit had declined certifying Walton's first § 2255 motion, the retroactive change in the law had already taken place, and therefore, the "settled substantive law" did not change "subsequent to the prisoner's direct appeal and first § 2255 motion"—part two of the *Wheeler* test. *Id*. The case that established a retroactive change in the law, *Miller*, 735 F.3d at 144, had been decided in August 2013, and Walton's § 2255 appeal was not decided until October 2013. In March 2021, the Fourth Circuit issued a summary order affirming the district court's order "for the reasons stated by the district court." *United States v. Walton,* 840 Fed. App'x 753, 753 (4th Cir. 2021).

Finally, the present petition is Walton's third attempt to seek relief under § 2255. The petition challenges the constitutionality of the imposition of his federal sentence, even though it is framed as a challenge under § 2241. His prior two § 2255 petitions were rejected in the

6

**JA 56**

Eastern District of North Carolina; the second dismissed after considering the merits, as I have discussed. In such a case, the district court can refer the successive § 2255 "to the appropriate Court of Appeals for certification or, if it is plain from the petition that the prisoner cannot demonstrate that a remedy under § 2255 would be inadequate or ineffective to test the legality of his detention, the district court may dismiss the § 2241 petition for lack of jurisdiction." *Bentley v. Fernandez*, No. 9:18-CV-1025 (MAD/CFH), 2018 WL 4853286, at *3 (N.D.N.Y. Oct. 5, 2018) (alteration omitted) quoting *Adams v. United States*, 372 F.3d 132, 136 (2d Cir. 2004). The appropriate Court of Appeals is the Fourth Circuit because Walton was sentenced in North Carolina. *See Sanchez v. Fernandez*, No. 918CV1188 (GLS/ATB), 2019 WL 4579226, at *7 (N.D.N.Y. May 2, 2019), report and recommendation adopted, No. 9:18-CV-1188 (GLS/ATB), 2019 WL 4573250 (N.D.N.Y. Sept. 20, 2019) ("Because petitioner was sentenced in Maryland, this court has no jurisdiction to decide a motion to vacate the petitioner's sentence, and such motion would have to be considered by the Fourth Circuit because it is undisputed that petitioner has brought multiple section 2255 motions. When the court determines that it lacks jurisdiction over a section 2241 petition, the court may dismiss the action.") (citation omitted). The Fourth Circuit, however, has made it plain that it does not consider § 2255 to be inadequate or ineffective to test the legality of Walton's detention.

In light of the binding authority in the Second Circuit that limits jurisdiction under the § 2255 exception to claims of actual innocence, and in light of the Fourth Circuit's recent ruling, Walton has failed to establish that this Court has jurisdiction to entertain the merits of his petition. Thus, the court lacks subject matter jurisdiction to entertain this petition.[2]

---

[2] The government argues in its memorandum in opposition to Walton's § 2241 petition that res judicata and/or collateral estoppel bar this action. ECF No. 25 at 1. In light of the discussion above, I need not address the issues of res judicata or collateral estoppel.

7

**JA 57**

**IV.    CONCLUSION**

For the reasons set forth above, Walton's petition for writ of habeas corpus is

DISMISSED.


IT IS SO ORDERED.


Dated:  August 2, 2021
        Hartford, Connecticut

                                    _____/s/_____
                                    Michael P. Shea, U.S.D.J.

8

**JA  58**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES EARL WALTON
     Petitioner

         v.

 D.K. WILLIAMS
       Respondent

Civil Action No.: 3:18cv1993 (MPS)

## **JUDGMENT**

This action having come on for consideration of the petitioner's petition for writ of habeas corpus pursuant to 28 U.S. C. § 2241 before the Honorable Michael P. Shea, United States District Judge; and

The Court having considered the full record of the case, including applicable principles of law, and having filed its Ruling on August 2, 2021 dismissing the writ of habeas corpus; it is therefore

ORDERED ADJUDGED and DECREED that judgment be entered dismissing the case.

Dated at Hartford, Connecticut, this 4th day of August 2021.

ROBIN D. TABORA, Clerk

By: _____/s/_____
  Devorah Johnson
  Deputy Clerk

EOD  8/4/21

**JA  59**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES EARL WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 3:18-cv-01993-MPS |
| | ) | |
| D.K. WILLIAMS, | ) | August 23, 2021 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MOTION TO EXTEND DEADLINE</u>

Notice is hereby given that James Earl Walton, Plaintiff in the above-captioned matter, hereby appeals to the United States Court of Appeals for the Second Circuit from the final judgment (Doc. 27) entered in this action on the 4th day of August, 2021.

Respectfully submitted,

BY: _____*/s/ Todd Bussert*_____
Todd Bussert, CT24328
FROST BUSSERT LLC
350 Orange Street, Suite 100
New Haven, CT 06511
(203) 495-9790; Fax: (203) 495-9795
tab@frostbussert.com

## <u>CERTIFICE OF SERVICE</u>

I hereby certify that on August 23, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____*/s/ Todd Bussert*_____
Todd A. Bussert

# JA 60